IN RE: THE ESTATE OF KIRBY W. LOFTIN, DECEASED (72E146) AND SYBIL LEWIS LOFTIN, PETITIONER-APPELLANT (73SP35) v. KIRBY C. LOFTIN, EXECUTOR OF THE ESTATE OF KIRBY W. LOFTIN, RE-SPONDENT-APPELLEE

## No. 36

### (Filed 10 October 1974)

1. **Husband and Wife § 2— antenuptial agreement — enforcement**

    A man and woman contemplating marriage may enter into a valid contract with respect to the property and property rights of each after the marriage, and such contracts will be enforced as written.

2. **Husband and Wife § 4— release of property rights after marriage — privy examination of wife**

    After marriage persons may release and quitclaim any rights as they might respectively acquire or may have acquired by marriage in the property of each other; however, such transactions between husband and wife are subject to the provisions of G.S. 52-6 requiring that the contracts be in writing and that the wife be given a privy examination. G.S. 52-10.

3. **Husband and Wife § 2— antenuptial agreement — wife's right to dissent — year's allowance**

    Antenuptial contracts, when properly executed and acknowledged, are not against public policy and may act as a bar to the wife's right to dissent and to petition for a year's allowance.

4. **Husband and Wife § 5— privy examination of wife — grounds for attack on certificate**

    A married woman or widow may directly attack the certificate of her acknowledgment and privy examination respecting the execution

of instruments during coverture which affect or change any part of the real estate belonging to her on the grounds of (1) fraud, duress or undue influence known of or participated in by the grantee; (2) no appearance before the officer and no examination had; (3) forgery; (4) mental incapacity or infancy.

**5. Husband and Wife § 5— certificate of privy examination — conclusiveness**

When a certificate of privy examination is regular in form and complies with G.S. 52-6, it is conclusive as to all matters which the statute requires the officer to certify except upon a showing of fraud or imposition in the procurement of the acknowledgment.

**6. Fraud § 3— material misrepresentation of fact**

In order to obtain relief from a contract on the ground of fraud, the moving party must show false representation of a past or subsisting material fact, made with fraudulent intent and with knowledge of its falsity, which representation was relied upon when the party executed the instrument.

**7. Duress; Fraud § 9— undue influence — duress — definitions**

Undue influence is a fraudulent influence over the mind and will of another to the extent that the professed action is not freely done but is in truth the act of the one who procures the result, while duress is the result of coercion and may be described as the extreme of undue influence and may exist even when the victim is aware of all facts material to his decision.

**8. Fraud § 9; Husband and Wife § 5— release of rights in husband's estate by wife — sufficiency of allegations of fraud**

Allegations by testator's widow that she did not know and was not advised as to the value of the assets of her husband's estate at the time she executed instruments releasing her rights in her husband's estate, that she signed the duplicate contract of release at her husband's insistence, and that although she appeared before the clerk of superior court on two occasions, she denied that she executed the instruments freely and voluntarily or that she was properly examined by the clerk were insufficient to allege fraud, undue influence or duress in the execution of the instruments.

**9. Husband and Wife § 2— antenuptial agreement — privy examination statute inapplicable**

The statute relating to a privy examination of the wife, G.S. 52-6, does not apply to antenuptial agreements.

Chief Justice BOBBITT not sitting.

APPEAL by petitioner-appellant Sybil Lewis Loftin from the decision of the Court of Appeals, reported in 21 N.C. App. 627, 205 S.E. 2d 574, finding no error in the judgment of *James, J.*, at the 10 September 1973 Session of LENOIR County Superior Court.

This appeal presents two separate but related actions which were consolidated for trial. In the first action (No. 72E146), Sybil Lewis Loftin, widow of Kirby W. Loftin, deceased, filed a dissent to the will of her late husband pursuant to Article 1 of Chapter 30 of the General Statutes of North Carolina. Petitioner's husband had died testate on 26 July 1973 leaving an estate valued in excess of five hundred thousand dollars. By the terms of his will, he left to petitioner the sum of five thousand dollars and a life estate in the homeplace. The executor of the estate of Kirby W. Loftin filed answer setting up in bar of petitioner's dissent, *inter alia*, a "Duplicate Antenuptial Contract," executed 14 May 1968 by petitioner and deceased.

The original contract, executed 30 December 1958, was lost when the safe in which the document was kept was burglarized. Both the 1958 and 1968 contracts contained a certificate of privy examination by the Clerk of Superior Court in due form, which certified that petitioner personally appeared before him for private examination and further certified that the proposed contract was not injurious to the wife and that she had assented to the provisions thereof by her own free will and not through any coercion or fear of her husband.

The provision of the contract especially pertinent to decision states:

"*Second:* That the party of the second part [petitioner] hereby releases, renounces, and quitclaims, all dower and all other rights in the real property, and all right to participate in the distribution of the personal property, and all claims for a year's allowance in the property of the said party of the first part [testator], should she survive him, both as to property now owned by him and property hereafter acquired, together with the right to administer on his estate."

As a second defense to the action, the executor alleged the fact that Sybil Lewis Loftin had accepted both the five-thousand-dollar bequest which she received under the will of her late husband and the life estate in the K. W. Loftin home, which she also received under the last will and testament of her late husband.

On these grounds the executor prayed the court that it enter an order declaring the dissent null and void and of no force or effect and declaring that Sybil Lewis Loftin was en-

titled to no interest in any real or personal property of Kirby W. Loftin either under his will or by intestacy.

In the other cause of action (No. 73SP35), petitioner, pursuant to G.S. 30-27 *et seq.*, seeks her year's allowance. The executor, answering this petition, again set up the "Duplicate Antenuptial Agreement" in bar of any such allowance.

The widow replied in both actions and contended that she was misled and did not know the extent of the contractual provisions which she signed; that she signed the agreement pleaded in bar after repeated importunity of her husband; and that she was at no time privately examined, separate and apart from her husband, by the Clerk of Superior Court. Petitioner admitted the genuineness of the signatures appearing on the duplicate antenuptial contract dated 14 May 1968.

The executor moved for summary judgment in each case. After consideration of the pleadings, the admissions, the contract dated 14 May 1968, the petitioner's admission of genuineness of signatures, and petitioner's affidavits, Judge James made findings of fact and rendered summary judgment in favor of the executor in each action. Petitioner appealed.

The Court of Appeals, Judge Vaughn dissenting, found no error. Petitioner appealed to this Court as a matter of right under G.S. 7A-30(2).

*Donald P. Brock for petitioner appellant.*

*Jeffress, Hodges, Morris and Rochelle, P.A., by A. H. Jeffress, for respondent appellee.*

BRANCH, Justice.

We first consider whether contracts with respect to her property and property rights constituted a bar to plaintiff's dissent and application for a year's allowance.

[1, 2] It is well settled in this jurisdiction that a man and woman contemplating marriage may enter into a valid contract with respect to the property and property rights of each after the marriage, and such contracts will be enforced as written. *Stewart v. Stewart*, 222 N.C. 387, 23 S.E. 2d 306; *Perkins v. Brinkley*, 133 N.C. 86, 45 S.E. 465; *Harris v. Russell*, 124 N.C. 547, 32 S.E. 958. After marriage the persons may release and quitclaim any rights as they might respectively acquire or may

have acquired by marriage in the property of each other. G.S. 52-10. Such transactions between husband and wife are, however, subject to the provisions of G.S. 52-6, which provides that "no contract between husband and wife made during their coverture shall be valid to affect or change any part of the real estate of the wife . . . unless such contract . . . is in writing, and is acknowledged before a certifying officer who shall make a private examination of the wife according to the requirements formerly prevailing for conveyance of land."

[3] Antenuptial contracts, when properly executed and acknowedged, are not against public policy and may act as a bar to the wife's right to dissent and to petition for a year's allowance. *Turner v. Turner*, 242 N.C. 533, 89 S.E. 2d 245; *Perkins v. Brinkley, supra.*

[4] A married woman or widow may *directly* attack the certificate of her acknowledgment and privy examination respecting the execution of instruments during coverture which affect or change any part of the real estate belonging to her. The general grounds for permissible attack in this instance are (1) fraud, duress or undue influence known of or participated in by the grantee; (2) no appearance before the officer or no examination had; (3) forgery; or (4) mental incapacity or infancy. *Eubanks v. Eubanks*, 273 N.C. 189, 159 S.E. 2d 562; *Lee v. Rhodes*, 230 N.C. 190, 52 S.E. 2d 674.

[5] We note that there is a vast difference between proof of no appearance and the denial of material findings in the certificate. As to the latter, when the certificate is regular in form and complies with G.S. 52-6, it is conclusive as to all matters which the statute requires the officer to certify except upon a showing of fraud or imposition in the procurement of the acknowledgment. *Lee v. Rhodes, supra; Best v. Utley*, 189 N.C. 356, 127 S.E. 337.

Thus, unless the certificate is attacked upon one of the above-stated grounds, when petitioner admitted her appearance before the Clerk of Superior Court, his certificate, regular in form, became conclusive and established that she acknowledged the due execution of the instrument and the purposes therein expressed; that she was privately examined separate and apart from her husband touching her voluntary execution of the same; that she signed the same freely and voluntarily without fear or compulsion of her said husband; and that it had been made to appear to the certifying officer's satisfaction, and he found as a

fact, that the execution of the instrument by petitioner was not unreasonable or injurious to her.

It is obvious that plaintiff does not rely upon mental incapacity, infancy or forgery as grounds for attack on the contracts. We therefore look to the remaining possible grounds upon which she must rely.

In petitioner's "reply to response for application for year's allowance" in *Loftin v. Loftin,* it was, in part, alleged:

". . . That at the time of the purported execution of the Antenuptial Contract, the undersigned widow and the deceased had been married for some ten years and misrepresentations were made to the widow at the time said contract was purportedly executed, both as to the assets of the deceased and as to the contents and meaning of said contract. That the execution of said contract was obtained through coercion and was in fact injurious and unfair to the undersigned widow."

We note that no similar allegations were contained in her "reply to answer to dissent to will" in the action of *In Re Loftin.*

Petitioner's strongest averments as to fraud or duress were to the effect that she did not know and was not advised as to the value of the assets of her husband's estate at the time she executed the instruments; that she signed the duplicate contract at her husband's insistence; and that although she appeared before the Clerk of Superior Court of Lenoir County on both occasions, she denied that she executed the instruments freely and voluntarily or that she was properly examined by the Clerk.

[6] In order to obtain relief from a contract on the ground of fraud, the moving party must show false representation of a past or subsisting material fact, made with fraudulent intent and with knowledge of its falsity, which representation was relied upon when the party executed the instrument. *Davis v. Davis,* 256 N.C. 468, 124 S.E. 2d 130; *Barnes v. House,* 253 N.C. 444, 117 S.E. 2d 265.

[7] Undue influence is a fraudulent influence over the mind and will of another to the extent that the professed action is not freely done but is in truth the act of the one who procures the result. *Lee v. Ledbetter,* 229 N.C. 330, 49 S.E. 2d 634; *Greene v. Greene,* 217 N.C. 649, 9 S.E. 2d 413. Duress is the result of coercion and may be described as the extreme of undue influence

and may exist even when the victim is aware of all facts material to his decision. *Link v. Link,* 278 N.C. 181, 179 S.E. 2d 697; 25 Am. Jur. 2d, *Duress and Undue Influence* § 1, page 353.

[8] We agree with the holding of the Court of Appeals that petitioner's allegations of fraud amounted to a mere conclusion not in compliance with G.S. 1A-1, Rule 9(b), or our former decisions, which require particular statements of the circumstances allegedly constituting fraud or duress. *Products Corp. v. Chestnutt,* 252 N.C. 269, 113 S.E. 2d 587; G.S. 1A-1, Rule 9(b). Certainly there were no allegations sufficient to allege undue influence or duress.

However, we call attention to the fact that this case differs procedurally from the case of *Van Every v. Van Every,* 265 N.C. 506, 144 S.E. 2d 603, upon which the Court of Appeals partially relied. In *Van Every* there was a motion for judgment on the pleadings, and the cause was dismissed for failure of the plaintiff to allege facts which, if found to be true, would permit a legitimate inference of fraud. In instant case, there was a motion for summary judgment pursuant to G.S. 1A-1, Rule 56, which made it incumbent upon the trial judge to consider the pleadings, affidavits, interrogatories, deposition and admissions which were before him. After such consideration, the trial judge correctly dismissed the actions upon finding that no genuine issue of material fact was raised in either proceeding.

We also observe in passing that the Court of Appeals used language which seemed to interpret our decision in *Turner v. Turner,* 242 N.C. 533, 89 S.E. 2d 245, to *require* that an antenuptial agreement satisfy the provisions of G.S. 52-6. It appears to us that this Court in *Turner,* while considering the total circumstances surrounding the execution of the antenuptial agreement, merely *observed* that the Clerk of Superior Court of Gates County did conduct a privy examination incorporating in his certificate the statement that the agreement was not unreasonable or injurious to the *femme* contractor.

[9] In our opinion the correct rule is stated by Dr. Robert E. Lee in his North Carolina Family Law, Vol. 2, § 181, page 364, as follows:

"N. C. Gen. Stat. § 52-12 [now renumbered as § 52-6] is not applicable to antenuptial agreements. It is limited in its application to contracts between the husband and wife which affect the real estate of the wife and separation

agreements. Antenuptial agreements are not made between a husband and a wife 'during their coverture.' A postnuptial agreement between the husband and wife which affects or changes any part of the wife's real estate must, of course, comply with the provisions of N. C. Gen. Stat. § 52-12 [now renumbered as § 52-6]."

We do not deem it necessary to discuss the question of whether petitioner was barred by her acceptance of benefits under the will since we hold that the contracts affecting her real property effectively barred her rights to dower and a year's allowance.

The opinion of the Court of Appeals is

Affirmed.

Chief Justice BOBBITT not sitting.