HERBERT McKINLEY HILL and wife, EDNA BYRD HILL, Plaintiffs and
Third-Party Plaintiff-Appellees v. ESTHER SMITH, Defendant-
Appellant v. WILLIAM H. ANDERSON and wife, MARGARITA H.
ANDERSON, Third-Party Defendants

No. 8018DC719

(Filed 5 May 1981)

**Wills § 61.4; Easements § 13– spouse's dissent from will – effect of election – land occupied under license**

The trial court properly entered an order of summary ejectment against defendant who had occupied the land in question for 55 years since defendant accepted a check representing the amount of a bequest to her under the will of her husband; pursuant to the terms of the will, defendant was given no interest in the land in question; by electing to take under the will, defendant was precluded from dissenting from the will; defendant therefore had no claim to the property in question which had been owned by her husband during his life; a letter written by a stockholder in the company which purchased the property in question informing defendant that she had the company's permission to occupy the house and have a garden on two and one-half acres surrounding the house, but that no deed to the property could be furnished her, created a gratuitous license for defendant to use the property; and the license, in absence of the consent of plaintiffs who purchased the land in question, did not survive the transfer of ownership of the property by the licensor.

APPEAL by defendant from *Alexander-Ralston, Judge.*
Order entered 11 April 1980 in District Court, GUILFORD County.
Heard in the Court of Appeals 10 February 1981.

Plaintiffs, Mr. and Mrs. Hill, filed an action for summary ejectment alleging that defendant, Esther Smith, was unlawfully living on property within a 28-acre tract owned by the plaintiffs. Hearing the case without a jury, the trial judge made findings of fact and issued an order based on those findings that "Esther Smith has no right of ownership and no right to reside on the above-mentioned twenty-eight acres of land ... and is hereby ordered to remove herself from the said land in question. ..." From that order, defendant appeals.

The facts in this case are not in dispute and have been stipulated to by the parties. Defendant Esther Smith was born in 1894 and presently is eighty-six years old. In 1913, Ms. Smith married James Lea but subsequently, the two separated. Thirteen years later in 1926, Ms. Smith went through a marriage ceremony with W.S. (Silas) Smith. At the time of this marriage

Hill v. Smith

ceremony, Silas Smith was record title owner of twenty-eight acres of land in Guilford County which remained in his name until his death.

In 1959 upon the advice of her attorney, Roy M. Booth, Ms. Smith instituted an action in Guilford County Superior Court requesting an absolute divorce from her first husband, James Lea. Ms. Smith was advised to do this in order to be eligible for Social Security benefits. In response to an interrogatory in this present action, however, Ms. Smith answered that in 1920 she was served with "what [she] thought were divorce papers from James A. Lea," but that she was no longer in possession of the papers, nor could she remember the county or state from which the papers came. Prior to the 1959 divorce from Lea, Ms. Smith and Silas Smith were advised by Attorney Booth to remarry once the divorce from Lea was completed, but the two never went through a second marriage ceremony.

In 1961, Silas Smith died testate. In his Last Will and Testament, Silas Smith bequeathed "$300 to go to Esther Smith," and the remainder of his estate to his son. Within the proper time for filing, Ms. Smith filed a widow's dissent to the Will of Silas Smith, and initiated a special proceeding to recover her widow's allowance. The executrix of the estate, Mamie R. Harris (Silas Smith's sister), answered Ms. Smith's petition denying that Ms. Smith was Silas Smith's widow and requesting the Clerk of Superior Court to strike the dissent. After a hearing, the Clerk entered a judgment finding that Esther Smith was never validly married to Silas Smith and therefore was not entitled to a widow's allowance or to dissent from the Will. Through her attorney, Roy Booth, Ms. Smith filed a notice of appeal in Superior Court but never processed that appeal. On 26 June 1967, some five years after the initiation of the appeal, Ms. Smith withdrew her appeal.

While her appeal was still pending in 1963, however, Ms. Smith, through her attorney, filed a complaint against the Estate of Silas Smith alleging that she had rendered valuable services during the thirty-five years she had lived with Silas Smith, and seeking $5,400 for those services rendered. In 1966, a voluntary nonsuit was entered in this action dismissing this *quantum meriut* claim. On 30 November 1966, a check for $262 was delivered to and accepted by Ms. Smith representing the

$300 bequest less estate taxes made to her under the Will of Silas Smith. Prior to this time, she had steadfastly refused to take the $300 left to her under the Will.

Before Ms. Smith withdrew her appeal in 1967, the twenty-eight acres of land were purchased from the Estate of Silas Smith by BOFA, Incorporated in which Roy Booth, Ms. Smith's attorney, was a principal shareholder. After this purchase, on 27 January 1967 Booth wrote Ms. Smith a letter stating in pertinent part:

> In order to keep you from being thrown out of your home, I had a Corporation, which I have an interest in, known as BOFA, Inc., buy the real estate from the heirs and the real estate is now owned by this Corporation. As I explained to you, I got permission for you to occupy the house and two one-half [sic] acres, which will give you the right to have a garden and this is all I could possibly do to help you with your troubles.
>
> . . . .
>
> I cannot furnish you with a deed as there has been no indication as to the two-one-half acres that you are to have the privilege of living on, and you will simply have to take my word for the fact that as long as you want to you can live in the house and use the two-one-half acres surrounding the house for your garden. . . .
>
> When your husband died, the Will, which was probated, gave you only $300.00. We filed a Dissent to the Will on your behalf and attempted to prove that you were the wife of Silas Smith, and Mr. Shore, our Clerk of Court, heard the evidence, and in view of the fact that you had filed a divorce action saying that another man was your husband, Mr. Shore ruled that you were not the wife of Silas Smith, and could therefore not dissent from his Will. You can understand why he made this ruling based on the allegations in the complaint filed in the divorce case. The entire matter fell through because you and Silas did not get married again after the divorce like we understood that you would. I know he got sick and died right afterwards, but I thought he was going to marry you the very next week the divorce was granted. Anyway, the evidence was such that we could

not contest the Will or do anything about it.

On 9 November 1967, BOFA, Inc. conveyed the property to Mr. and Mrs. William H. Anderson by warranty deed. Four months later on 27 February 1968, the property was conveyed by deed to the plaintiff-appellees in this action, Mr. and Mrs. Herbert Hill. In 1976, plaintiffs brought this action for summary ejectment. Defendant Ms. Smith presently lives on two and one half acres of the land and at this writing has lived there continuously for the past fifty-five years.

*O'Connor, Speckhard & Speckhard, by Donald K. Speckhard, for defendant appellant.*

*Badgett, Calaway, Phillips, Davis, Stephens, Peed & Brown, by Chester C. Davis, for plaintiff appellee.*

BECTON, Judge.

The central issue presented on appeal is: whether the trial judge, based on the stipulated findings of fact, properly concluded that the defendant, Esther Smith, was willfully and unlawfully in possession of land owned by the plaintiffs, Mr. and Mrs. Herbert M. Hill. The scope of our review is to determine whether the findings of fact fairly and reasonably support the conclusions of law reached by the trial judge.

Ms. Smith's main objection in her four assignments of error focuses on the trial judge's conclusion that the Clerk of Superior Court of Guilford County had subject matter jurisdiction to hear and determine the validity of her marriage to Silas Smith and therefore her right to dissent from his Will. Ms. Smith argues (1) that the Clerk's jurisdiction is narrowly limited to establishing a spouse's right to dissent based solely upon a mere mathematical determination of the value of the property passing to the surviving spouse under the Will and outside the Will; (2) that, under G.S. 1-174, issues of fact joined before the Clerk must be transferred to the Superior Court for final determination; (3) that the question of the validity of her marriage to Silas Smith was an issue of fact which should have been, but was not, transferred to the Superior Court; (4) that therefore, the Clerk had no subject matter jurisdiction to decide her right to dissent; (5) that absent proper subject matter jurisdiction, the Clerk could not properly rule on the validity of her marriage to Silas Smith; and (6) that the trial judge, in this summary

ejectment proceeding, could not conclude as a matter of law that the Clerk had jurisdiction, and further, could not conclude that she was unlawfully on plaintiffs' property.

Based on the stipulated facts, however, this argument raises questions about the Clerk's probate jurisdiction which we need not decide today. Even if we were to assume *arguendo* that the Clerk did not have subject matter jurisdiction to strike Esther Smith's dissent, the findings of fact stipulated to by the parties would still support the trial judge's conclusion that she has no right, title or interest in any of the real property now owned by the plaintiffs — Mr. and Mrs. Hill. The parties to this summary ejectment proceeding stipulated that "on November 30, 1966, the Clerk of Superior Court of Guilford County delivered to Esther Smith a check in the sum of $262.20, the same representing the $300.00 bequest less pro rata estate taxes and Clerk's commission." This refers to the bequest made to Ms. Smith under the Will of Silas Smith in which he bequeathed "$300.00 to go to Esther Smith" without reference to her as his wife. It is a common principle of law in North Carolina that a surviving spouse must elect between taking under a Will and dissenting from the Will. The spouse cannot do both; the election of one precludes the other. *In re Estate of Loftin,* 21 N.C. App. 627, 205 S.E. 2d 574, *aff'd* 285 N.C. 717, 208 S.E. 2d 670 (1974); *see also Gomer v. Askew,* 242 N.C. 547, 89 S.E. 2d 117 (1955). In *In re Loftin,* the petitioner wife was estopped to dissent from her deceased husband's Will when she accepted the $5,000 bequest and life estate in the house given to her under the terms of the Will. The court pointed out, "[h]aving accepted benefits [under the Will] petitioner may not repudiate the Will and take her intestate share." 21 N.C. App. at 631, 205 S.E. 2d at 576. Given the stipulated fact that Ms. Smith accepted her bequest under the Will of Silas Smith, even if she were his lawful wife, she cannot now claim a right still in existence to dissent from that Will. By waiving her right to dissent, Ms. Smith has no claim to the property in question. The trial judge's conclusion of law that Ms. Smith is unlawfully in possession of plaintiff-appellee's land is supported, therefore, by the findings of fact stipulated to by the parties.

Ms. Smith's alternative claim is that the letter from Roy M. Booth dated 27 January 1967 conveyed a life estate in the house and two and one-half acres of land to her. A careful review of the

letter does not support this contention. The letter — written by Roy M. Booth in his capacity as a stockholder in BOFA, Inc. which purchased the entire twenty-eight acres of land from the estate of Silas Smith — specifically informed Ms. Smith that she had the company's permission to occupy the house and have a garden on the two and one-half acres, but that no deed to the property could be furnished to her. At the very most, the letter created a gratuitous license for Esther Smith to use the property. It is well established that a license does not create a property interest in land, and it is equally settled that a license is revocable at the will of the licensor. *Sanders v. Wilkerson*, 285 N.C. 215, 204 S.E. 2d 17 (1974); 1A, Thompson on Real Property, §223 (1980); Webster, Real Estate Law in North Carolina, §§310, 312 (1971). Additionally, without the consent of the new owners, licenses generally do not survive the transfer of ownership of the property by the licensor. 1A Thompson, *supra*, at §216; Webster, *supra*, at §312.

In the case at bar, Esther Smith was granted permission to remain on the property impliedly for as long as BOFA, Inc. owned the property. This she did. Once the property was sold, Esther Smith's privilege to live on the property granted by BOFA came to an end. Esther Smith had no enforceable property right in the land in question. The trial judge therefore was correct in all respects, and her order is hereby

Affirmed.

Judge VAUGHN and Judge WELLS concur.