IN THE MATTER OF THE ESTATE OF SHIRLEY ALLRED TUCCI

No. 8821SC793

(Filed 5 July 1989)

**Husband and Wife § 12— separation agreement—subsequent reconciliation and death of spouse—right to dissent from will**

    The trial court incorrectly affirmed the Clerk of Court's conclusion that a reconciliation rescinded a release of the statutory right to dissent from a will where the Tuccis executed a separation/property settlement agreement on 18 November 1983 which stated that they had separated on 15

## IN RE ESTATE OF TUCCI

[94 N.C. App. 428 (1989)]

October 1983; they reconciled in December 1983, lived together until some time in September 1985, and entered into a consent judgment for divorce from bed and board in December 1985 which was later set aside; Mrs. Tucci died in March 1986; Mr. Tucci filed his notice of dissent after her will was probated; the Clerk of Superior Court concluded that the separation agreement had been rescinded by the reconciliation; and the Superior Court affirmed the Clerk's order. The agreement was by its own terms a combined separation agreement and property settlement and clearly stated that the parties' continued separation was not a condition to the property settlement provisions of the agreement. The mere fact that the Tuccis reconciled is not inconsistent with the property settlement provisions of this agreement under these circumstances and therefore did not impliedly rescind Mr. Tucci's release of his right to dissent. N.C.G.S. § 30-1.

Judge EAGLES dissenting.

APPEAL by Estate of Shirley Allred Tucci from *Rousseau (Julius A.), Judge.* Order entered 2 May 1988 in Superior Court, FORSYTH County. Heard in the Court of Appeals 17 February 1989.

*Womble Carlyle Sandridge & Rice, by Michael E. Ray, Kurt C. Stakeman and Lori P. Hinnant, for appellant-estate.*

*Harrison, Benson, Fish, North, Cooke & Landreth, by Michael C. Landreth and A. Wayland Cooke, for appellee-dissenter.*

GREENE, Judge.

The Estate of Shirley Allred Tucci (the "Estate") appeals from the judgment of the superior court allowing Mrs. Tucci's surviving spouse to dissent from her will under Section 30-1. *Cf.* N.C.G.S. Sec. 30-1 (1984). The Tuccis were married on 4 November 1978 and had one child in 1980. On 18 November 1983, the parties executed a separation/property settlement agreement (the "Agreement") which stated the parties had separated on 15 October 1983. Although the first page of the Agreement is titled "Separation Agreement," the Agreement's fourteen paragraphs are preceded by other titles including, "Custody," "Support," "Debts," and "Property Settlement." The Agreement recited that "it is understood and agreed that the division of the property in this *Separation Agreement and Property Settlement* is a full and complete distribution of the marital and separate property of the parties in a manner deemed by the parties to be equitable under the laws of North

IN RE ESTATE OF TUCCI

[94 N.C. App. 428 (1989)]

Carolina, including North Carolina G.S. 50-20." (Emphasis added.) The parties divided various items of real and personal property and released each other from the duty of support and "any and all other rights which may have arisen . . . out of the . . . marriage." The Agreement stated with respect to Mr. Tucci that:

> The said husband . . . does hereby release and relinquish unto the said wife, her heirs, administrators, executors, and assigns, all rights or claims of curtesy, inheritance, descent, distribution and all other rights or claims growing out of the marital relationship between the parties . . . and the said husband shall forever be barred from all rights in the estate of the said wife, real, personal and mixed, now owned or hereafter acquired by her.

Paragraph 12 of the Agreement also stated:

> [T]he provisions of this *Separation Agreement and Property Settlement* are executed and in full force and effect on this date and that should at any time in the future the parties resume marital cohabitation in any respect that the provisions of the Separation Agreement and Property Settlement are and shall remain valid and fully enforceable, and of full legal force and effect. [Emphasis added.]

In late December 1983, the couple reconciled and lived together until sometime in September 1985. In December 1985, the parties entered a Consent Judgment for divorce from bed and board; however, as the Consent Judgment contained no findings on any of the grounds for divorce from bed and board under Section 50-2, this court upheld a court order setting aside the Consent Judgment as void. *Allred v. Tucci*, 85 N.C. App. 138, 354 S.E. 2d 291, *cert. denied*, 320 N.C. 166, 358 S.E. 2d 47 (1987).

Mrs. Tucci died on 20 March 1986. After her will was probated, Mr. Tucci filed his notice of dissent. Pursuant to its authority as an ex officio probate judge with original jurisdiction under Section 7A-241 and Section 28A-2-1, the clerk of superior court entered, among others, the following findings and conclusions:

> 10. That the testatrix and the surviving spouse separated and executed a Separation Agreement on or about November 18, 1983. Subsequent thereto, on or about Christmas Day of 1983, the parties reconciled and resumed their marital relations

IN RE ESTATE OF TUCCI

[94 N.C. App. 428 (1989)]

and lived together in the family homeplace as husband and wife with their minor child through mid-September 1985.

11. That between Christmas Day, 1983 and mid-September, 1985, the testatrix and her surviving spouse travelled together to Mexico, to Lake Tahoe, California, with their child, to Kiawah Island, South Carolina, with their child, entertained friends and family in their home, filed joint federal and state income tax returns, attended church together, shared a bedroom in the family homeplace, and held themselves out as man and wife in the ordinary acceptation of the descriptive phrase.

12. That the surviving spouse did not execute or deliver a quitclaim deed to the homeplace as called for in the Separation Agreement, and further, the deceased testatrix continued, after Christmas Day, 1983, to support the surviving spouse and minor child of the marriage in the same manner in which she had, prior to the parties' separation.

. . . .

14. That the conduct of the parties to the Separation Agreement occurring after Christmas Day, 1983, exhibited the intent on their parts to reconcile, resume their marital relations, hold themselves out as husband and wife, and rescind the terms and provisions of the Separation Agreement.

. . . .

BASED UPON THE FOREGOING FINDINGS OF FACT, THE COURT MAKES THE FOLLOWING CONCLUSIONS OF LAW:

. . . .

4. That the parties' reconciliation and the resumption of their marital relationship together with their other manifestations of intent to do so, as hereinabove described, did rescind the terms and provisions of the November 18th, 1983 Separation Agreement, as by North Carolina law provided.

5. That the right of the surviving spouse to dissent from the will of testatrix arose as of the date of her death, and a waiver of that right necessarily required the surviving spouse not to do a particular thing in the future and was, therefore, an executory provision.

. . . .

IN RE ESTATE OF TUCCI

[94 N.C. App. 428 (1989)]

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that James Michael Tucci, the surviving spouse of Shirley Allred Tucci has the right under the law of North Carolina to dissent from the will of the decedent, and that the dissent . . . is valid . . . and hereby allowed pursuant to the laws of the State of North Carolina.

The Estate appealed to a judge of the superior court under Section 1-272. The superior court held the clerk's findings were supported by competent evidence and supported its conclusions of law. The court consequently affirmed the clerk's order allowing the dissent. The Estate appeals.

---

Although the Estate assigns numerous errors to the proceedings below, the dispositive issue is whether the clerk correctly concluded that the Tuccis' resumption of their marital relationship rescinded Mr. Tucci's release of all rights in Mrs. Tucci's estate. Under the facts of this case, we conclude the Tuccis' reconciliation did not imply any rescission of the provisions of the Agreement settling the parties' property rights, including the provision releasing the parties' statutory right to dissent under Section 30-1. As there is no other evidence of rescission nor any other ground asserted that might invalidate Mr. Tucci's release of his rights as a surviving spouse, we hold the Agreement barred Mr. Tucci's statutory right to dissent under Section 30-1.

The statutory right to dissent as a surviving spouse under Section 30-1 is analogous to the former common law spousal rights of dower and curtesy. *Etheridge v. Etheridge*, 41 N.C. App. 44, 255 S.E. 2d 729 (1979), *disc. rev. denied*, 293 N.C. 253, 267 S.E. 2d 660 (1980). Taking a share of the deceased spouse's estate under the circumstances specified in Section 30-1 is a statutory alternative to taking under the deceased spouse's will. *Hill v. Smith*, 51 N.C. App. 670, 277 S.E. 2d 542, *disc. rev. denied*, 303 N.C. 543, 281 S.E. 2d 392 (1981). In addition, a couple may elect before or after marriage to forego *all* such spousal property rights pursuant to a complete property settlement; for example,

> [i]t is well-settled in this jurisdiction that a man and woman contemplating marriage may enter into a valid contract with respect to the property and property rights of each after the marriage, and such contracts will be enforced as written. . . . After marriage the persons may release and quitclaim any

rights as they might respectively acquire or may have acquired by marriage in the property of each other. G.S. 52-10. . . . Antenuptial contracts, when properly executed and acknowledged, are not against public policy and may act as a bar to the . . . right to dissent . . .

*In re Loftin,* 285 N.C. 717, 720-21, 208 S.E. 2d 670, 673-74 (1974); *see also Lane v. Scarborough,* 284 N.C. 407, 200 S.E. 2d 622 (1973) (complete property settlement barred rights as surviving spouse of intestate); *Sedberry v. Johnson,* 62 N.C. App. 425, 302 S.E. 2d 924, *disc. rev. denied,* 309 N.C. 322, 307 S.E. 2d 167 (1983) (property settlement release barred testamentary share under will). As we stated in *Sedberry,* "to restore to one party, subsequent to the death of the other, rights bargained away in the separation agreement, would deny the agreement its intended 'full and final' effect, in contravention of the policy that such agreements 'shall be legal, valid, and binding in all respects.'" *Sedberry,* 62 N.C. App. at 429, 302 S.E. 2d at 927 (quoting 2 R. Lee, *North Carolina Family Law* Sec. 187 at 461 (4th ed. 1980)).

Although Mr. Tucci's release did not enumerate the statutory right to dissent under Section 30-1, it did release "all rights or claims of curtesy, inheritance, descent, and distribution and all other rights or claims growing out of the marital relationship between the parties . . . [and] all rights in the estate of the said wife, real, personal and mixed, now owned or hereafter acquired by her." This full and final settlement of such rights encompasses the unenumerated statutory right of dissent under Section 30-1. *See Lane,* 284 N.C. at 412, 200 S.E. 2d at 625 (implying release of right to dissent as surviving spouse of intestate under Section 29-13); *Blankenship v. Blankenship,* 234 N.C. 162, 66 S.E. 2d 680 (1951) (implying release of curtesy right); *see also Hagler v. Hagler,* 319 N.C. 287, 354 S.E. 2d 228 (1987) (implying release of right to equitable distribution).

Although one spouse may not unilaterally cancel a valid marital contract, both spouses may rescind the contract by executing an agreement to that effect. *See* 17 Am. Jur. 2d, *Contracts* Sec. 490 at 962 (2d ed. 1964). Clearly, that did not occur in this case. Instead, Mr. Tucci asserted below that his reconciliation with Mrs. Tucci in December 1983 rescinded the Agreement by implication. Whether or not the parties' reconciliation rescinded Mr. Tucci's release of his right to dissent is initially determined by examining the Agree-

IN RE ESTATE OF TUCCI

[94 N.C. App. 428 (1989)]

ment and the parties' subsequent conduct in light of ordinary contract principles. As the *Hagler* Court stated with respect to marital contracts in general, " 'The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.' . . . When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning . . . ." *Hagler*, 319 N.C. at 294, 354 S.E. 2d at 234 (citations omitted).

Furthermore, the trial court must recognize the differing effects of reconciliation on the individual provisions of a single agreement which combines a "separation agreement" with a "property settlement":

> [I]t is particularly necessary to distinguish between 'property settlements' and 'separation agreements' in determining the intended effects of marital agreements: 'A separation agreement is a contract between spouses providing for marital support rights and is executed while the parties are separated or are planning to separate immediately. A property settlement provides for a division of real and personal property held by the spouses. *The parties may enter a property settlement at any time, regardless of whether they contemplate separation or divorce*'. . . It is true that contract provisions covering both support duties and property rights are usually included in a single document which the parties refer to as a 'separation agreement.' . . . However, noting the label attached to a provision of a marital agreement is no substitute for analyzing the provision's intended effect in light of the agreement's express language and purposes.

*Small v. Small*, 93 N.C. App. 614, 379 S.E. 2d 273, 277 (1989) (emphasis added) (citations omitted). Our Supreme Court has stated that, "the heart of a separation agreement is the parties' intention and agreement to live separate and apart forever . . ." *In re Adamee*, 291 N.C. 386, 391, 230 S.E. 2d 541, 545 (1976). Therefore, "a separation agreement between husband and wife is terminated for every purpose insofar as it remains executory upon their resumption of the marital relation . . ." *Id*. However, a property settlement "contains provisions . . . which might with equal propriety have

been made had no separation been contemplated . . ." *Jones v. Lewis*, 243 N.C. 259, 261, 90 S.E. 2d 547, 549 (1955). Therefore,

> where the agreement for separation includes a division of property which might have been made if no separation had taken place, the reconciliation does not abrogate this division . . . If an agreement between husband and wife providing for their separation goes beyond the terms of a mere separation deed and is in effect a good voluntary settlement of the husband on his wife, a subsequent reconciliation between the parties cannot affect the agreement so far as it constitutes a settlement. Hence, the settlement must stand notwithstanding the reconciliation.

*Id.* at 61-62, 90 S.E. 2d at 549-50 (citations omitted). As we summarized in *Small*:

> Thus, under *Jones*, the resumption of relations does not necessarily rescind a property settlement 'which might with equal propriety have been made had no separation been contemplated' since there is no presumption that a division of property rights is necessarily founded on the parties' desire to separate and live apart. Conversely, where a provision of a marital contract *is* necessarily founded on the parties' agreement to live separate and apart, the parties' resumption of the marital relationship does rescind the provision insofar as the provision is executory . . . [citation omitted]. Finally, since the parties' express intent in the agreement is the touchstone for construing the agreement, there may certainly be hybrid agreements which expressly condition property settlement provisions on the parties' living separate and apart. *E.g., Higgins [v. Higgins*, 321 N.C. 482, 484, 364 S.E. 2d 426, 428 (enforcing parties' express agreement to convey land only if they lived separate and apart for one year)].

*Small*, 93 N.C. App. at ---, 379 S.E. 2d at 280.

With reference to the contract principle of implied rescission, it is well settled that "a contract may be rescinded or discharged by acts or conduct of the parties inconsistent with the continued existence of the contract, and mutual assent to abandon a contract may be inferred from the attendant circumstances and conduct of the parties . . . [T]o be sufficient the acts and conduct must be positive and unequivocal." 17 Am. Jur. 2d, *Contracts* Sec. 494

at 967 (2d ed. 1964). Even if rescission is inferred from the parties' conduct, only those provisions of the marital contract that remain executory are rescinded. *See Adamee*, 291 N.C. at 391, 230 S.E. 2d at 545. A partial rescission may be allowed "where the contract is a divisible one and the ground of rescission relates merely to a severable part thereof." 17 Am. Jur. 2d, *Contracts* Sec. 488 at 959. Generally speaking, the provisions of a marital contract dividing real and personal property are severable from provisions concerning alimony or support since "[t]here is a clear distinction between a property settlement and the discharge of the obligation to support." *Shoaf v. Shoaf*, 282 N.C. 287, 291-92, 192 S.E. 2d 299, 303 (1972) (distinguishing between property division and support provisions of consent judgment); *see also* 2 R. Lee, *North Carolina Family Law* Sec. 187 at 463 (4th ed. 1980) (whether provision is part of property settlement or separation agreement depends upon intention of parties derived from contract terms).

As the Agreement repeatedly refers to itself as a "Separation Agreement" and "Property Settlement" the Agreement is by its own term a combined separation agreement and property settlement. (Given the principles stated previously, we do not believe the Clerk's references to the Agreement as the "Separation Agreement" are of dispositive legal significance.) Like the statutory right to equitable distribution, the statutory right to dissent does not affect any marital duties of support and may be released under a valid property settlement. *Cf. Small*, 93 N.C. App. at ---, 379 S.E. 2d at 277 (concerning equitable distribution and duty of support); *see also Hagler v. Hagler*, 319 N.C. 287, 290, 354 S.E. 2d 228, 232 (1987). While the provisions of the Agreement dealing with the parties' living separate and apart and issues of custody and support contemplate the parties' continued separation, the Agreement "goes beyond the terms of a mere separation deed and is in effect a good voluntary settlement" of the parties' property rights including the statutory right to dissent under Section 30-1. *Jones*, 243 N.C. at 262, 90 S.E. 2d at 549.

Therefore, the mere fact of the Tuccis' reconciliation did not impliedly rescind that settlement: Since rescission by conduct only arises from conduct which is "positively" and "unequivocally" inconsistent with the contract, Mr. Tucci's contention that his reconciliation with Mrs. Tucci rescinded his release is necessarily founded on the premise that the parties' continuing to live separate and apart was part of the consideration for, or was an implied condition

**IN RE ESTATE OF TUCCI**

[94 N.C. App. 428 (1989)]

of, Mr. Tucci's release of his statutory right to dissent. *See Small,* 93 N.C. App. at ---, 379 S.E. 2d at 279 (reconciliation would rescind property settlement only if settlement depended on parties living separate and apart). However, the Tuccis' Agreement clearly states the parties' continued separation was *not* a condition to the property settlement provisions of the Agreement. On the contrary, Paragraph 12 of the Agreement stated that "should at any time in the future the parties resume marital cohabitation in any respect . . . the provisions of this Separation Agreement and Property Settlement are and shall remain valid and fully enforceable and of full legal force and effect."

In *Small,* we held the parties' continuation or resumption of their marital relationship did not rescind a release of the right to equitable distribution where the defendant offered no other proof that the parties' separation was consideration for the settlement of all property rights including the right to equitable distribution. 93 N.C. App. at ---, 379 S.E. 2d at 280. Likewise, we will not presume—contrary to the express language of the Agreement and in the absence of any other evidence in the record—that Mr. Tucci's release of his statutory right to dissent was contingent on the parties' continued separation. As there is no other evidence of rescission in the record, it is immaterial whether Mr. Tucci's release was executory at the time the Tuccis reconciled. Thus, we conclude the Tuccis' reconciliation did not imply a rescission of Mr. Tucci's release of his statutory right to dissent under these circumstances.

In addition to complying with ordinary contract principles, marital agreements must always comply with public policy. *Cf.* N.C.G.S. Sec. 52-10(a) (1984). We note Mr. Tucci has not attempted to show his release was vitiated by any fraud, unconscionability, duress or overreaching. *Cf. Knight v. Knight,* 76 N.C. App. 395, 398, 333 S.E. 2d 331, 333 (1985); *see also Harton v. Harton,* 81 N.C. App. 295, 297, 344 S.E. 2d 117, 119 (1986) (spouses are fiduciaries until they separate, retain counsel and negotiate as adversaries). Furthermore, Mr. Tucci's release, as well as the contractual provision that the property settlement would continue despite the parties' reconciliation, are consistent with public policy as required of all marital agreements under Section 52-10(a). It is true our Supreme Court has stated as public policy that married parties may not shirk their spousal duties of support and alimony and yet live together as a married couple. *E.g., Motley v. Motley,* 255 N.C. 190, 193, 120 S.E. 2d 422, 424 (1961) (Section 52-10(a) would

not validate antenuptial waiver of support); *see also Gray v. Snyder*, 704 F. 2d 709, 712 (4th Cir. 1983) (under North Carolina law, spouses must separate or intend to separate immediately to execute valid support waiver under Section 52-10.1). However, that policy is not offended by permitting the same spouses to execute a complete settlement of all spousal interests in each other's real and personal property and yet live together. *E.g., Jones*, 243 N.C. at 262, 90 S.E. 2d at 550 (reconciliation does not "abrogate" division of property); *Buffington v. Buffington*, 69 N.C. App. 483, 488, 317 S.E. 2d 97, 100 (1984) ("public policy . . . permits spouses to execute property settlement at any time, regardless of whether they separate immediately thereafter or not"); *Love v. Mewborn*, 79 N.C. App. 465, 339 S.E. 2d 487, *disc. rev. denied*, 317 N.C. 704, 347 S.E. 2d 43 (1986) (upholding cash payments as part of property settlement even though obligation executory when parties resumed sexual relations); *but cf. Carlton v. Carlton*, 74 N.C. App. 691, 693, 329 S.E. 2d 682, 684 (1985) (release of equitable distribution executed after separation held void after reconciliation).

It appears public policy under *Motley* would not have permitted these parties to enforce the "separation" provisions of their Agreement, i.e., their waivers of support and alimony, and yet live together as a married couple; however, no public policy is offended by the continued validity of the property settlement provisions of this Agreement. Indeed, in light of Paragraph 12 of the Agreement, it appears the execution of the Agreement was intended to *encourage* the parties to reconcile and improve their marriage. Of course, a contractual provision providing that the contract will continue despite the parties' reconciliation is itself as subject to rescission as any other contractual provision. "[T]he parties to separation agreements must still be able to cancel their agreements, and the indicia of the intent to cancel as developed in our common law . . . must also still be intact." *Carlton*, 74 N.C. App. at 694, 329 S.E. 2d at 685. However, in light of the common law indicia of implied rescission, we hold the mere fact the Tuccis reconciled is not inconsistent with the property settlement provisions of this Agreement under these circumstances and therefore did not impliedly rescind Mr. Tucci's release of his right to dissent.

In passing, we note Mr. Tucci's reliance on our decision in *Carlton* which held the parties' previous release of their right to equitable distribution became void when they resumed marital relations after a period of separation. *Carlton* distinguished itself from

IN RE ESTATE OF TUCCI

[94 N.C. App. 428 (1989)]

the apparently contrary result in *Buffington* by stating *Buffington* only dealt with common law principles affecting the validity of separation agreements entered into while the parties were still living together. After *Carlton*, this court again considered the case where spouses resumed marital relations after a period of separation and held that "property settlements may be executed before, during or after marriage and are not necessarily terminated by reconciliation." *Love*, 79 N.C. App. at 466, 339 S.E. 2d at 488. Both the majority and dissenters in *Higgins* expressly approved the results in both *Buffington* and *Love*. *Compare Higgins*, 321 N.C. at 485, 364 S.E. 2d at 428 (majority approvingly stated holding was consistent with *Buffington* and *Love*) *with id*. at 491, 364 S.E. 2d at 432 (Whichard, J., dissenting) (approving holdings in *Buffington* and *Love*). The *Higgins* Court did not hold that agreement was "void," but held the contractual provision to transfer property was defeated by the parties' reconciliation because the provision expressly conditioned the transfer on the parties "living continuously separate and apart" for one year. *Id*. at 485, 364 S.E. 2d at 429. The *Higgins* Court divided over the meaning of the phrase "living continuously separate and apart," not over the validity of the agreement. Insofar as the result in *Carlton* may be inconsistent with *Buffington* and *Love*, it has apparently been superseded by the decision of our Supreme Court in *Higgins*.

Accordingly, we hold the trial court incorrectly affirmed the clerk's conclusion that the Tuccis' reconciliation rescinded Mr. Tucci's release of his statutory right to dissent. As the Agreement was executed in accord with Section 52-10(a), the Agreement constitutes a plea in bar to Mr. Tucci's notice of dissent under Section 30-1. We therefore reverse the trial court and remand with the instruction that Mr. Tucci's notice of dissent be dismissed.

Reversed and remanded.

Judge COZORT concurs.

Judge EAGLES dissents.

Judge EAGLES dissenting.

I respectfully dissent.

The majority opinion calls the agreement a "separation/property settlement agreement" and concludes that the Tuccis' post

execution marital reconciliation did not rescind their separation agreement. I disagree and would affirm.

The agreement here is clearly a separation agreement. The document is titled "Separation Agreement." From the terms of the agreement and the circumstances of its execution, it is clear that Mr. and Mrs. Tucci intended to create a separation agreement. Paragraph I of the agreement itself states: "That the parties shall continue to live *separate and apart*, each, being free from interference, authority or control by the other as full as if he or she were unmarried. . . ." [Emphasis added.] The clerk of court found as a fact that the parties both separated and executed the separation agreement "on or about" November 18, 1983. Of greater significance here we note that the appellants did not except to the clerk's findings of fact that the document was a separation agreement and that the agreement was executed by the separating spouses "on or about November 18," the date found to be the approximate date of separation.

Since the agreement was a separation agreement, there are well established principles concerning the consequences of reconciliation which apply here. "It is well settled in our law that a separation agreement between husband and wife is terminated for every purpose insofar as it remains executory upon their resumption [reconciliation] of the marital relation." *In re Estate of Adamee*, 291 N.C. 386, 391, 230 S.E. 2d 541, 545 (1976). "Further, a subsequent separation will not revive the agreement." *Id.* at 393, 230 S.E. 2d at 546.

Here, the clerk of superior court's findings of fact clearly indicate that only 37 days after the date of separation and when the agreement was signed, the couple reconciled, re-established a matrimonial home, and for over 20 months held themselves out as man and wife "in the ordinary acceptation of the descriptive phrase." Accordingly, I would hold that the agreement was "terminated for every purpose insofar as it remains executory" upon their resumption of the marital relationship. *Carlton v. Carlton*, 74 N.C. App. 690, 692, 329 S.E. 2d 682, 684 (1985).

"The executory provisions of a separation agreement are those in which 'a party binds himself to do or not to do a particular thing *in the future*'. . . . 'Executed' provisions are those which have been carried out, and which require no future performance." *Id.* at 693, 329 S.E. 2d at 684 [citations omitted].

**IN RE ESTATE OF TUCCI**

[94 N.C. App. 428 (1989)]

Here, paragraph XIV of the agreement provides: "each party, nevertheless, agrees in order to fully effectuate this intention *to execute in the future such additional claims*, releases or other acquittances as may be necessary or appropriate for this purpose." This language contemplates loss of the right to dissent, recognizes that it is executory, and may require further action as events occur giving rise to new rights. Here the agreement is void as to the executory portions because of the resumption of the marital relationship and the right to dissent is clearly contemplated by the agreement itself as an executory provision.

Additionally, the public policy of our State should encourage continuation of viable marital relationships and should favor reconciliation of temporarily separated spouses. Resumption of the marital relationship and its attendant legal consequences should be possible without the necessity for any formal revocation of earlier separation agreements or formal reexecution of marriage vows or other artificial complexities.

In the *Carlton* opinion, though speaking on a different issue (the effect of enactment of G.S. 50-20(d) on equitable distribution actions), our court summed up my views:

We do not believe that . . . the General Assembly intended that a written separation agreement, once entered into, would be forever binding. . . . Rather, the parties to separation agreements must still be able to cancel their agreements, and the indicia of the intent to cancel as developed in our common law, [I] believe, must also still be intact.

*Id.* at 694, 329 S.E. 2d at 685.

For these reasons, I dissent and would vote to affirm.