HENRY DUNLAP DAWBARN, JR., PLAINTIFF v. LINDA KAY DAWBARN, DEFENDANT

No. COA05-364

(Filed 7 February 2006)

**1. Husband and Wife— postnuptial agreement—property transferred upon signing—not void**

A postnuptial agreement that transferred property to defendant wife was not void as against public policy where the property was transferred upon the signing of the agreement, so that neither party had an incentive to end the marriage. Summary judgment was properly granted for defendant.

**2. Husband and Wife— postnuptial agreement—statute of limitations**

Any claim for fraud, duress, or undue influence involving a postnuptial agreement accrued at the time the agreement was signed because plaintiff was aware of defendant's alleged threats when he signed. The statute of limitations barred plaintiff's claim and summary judgment was properly granted for defendant.

**3. Husband and Wife— postnuptial agreement—fiduciary duty—representation by attorney**

The fiduciary duty between husband and wife terminated and was not breached where the parties went to defendant wife's attorney to sign a postnuptial agreement. Moreover, plaintiff does not point to any evidence that defendant failed to disclose information she should have disclosed. Summary judgment was correctly granted for defendant.

Appeal by Plaintiff from judgment entered 8 October 2004 by Judge Kimberly Taylor, in Superior Court, Iredell County. Heard in the Court of Appeals 6 December 2005.

*Pope, McMillan, Kutteh, Simon & Privette, P.A., by Charles A. Schieck, for plaintiff-appellant.*

*Homesley, Jones, Gaines & Dudley, by Edmund L. Gaines and Mitchell P. Johnson, for defendant-appellee.*

WYNN, Judge.

In general, public policy "is not offended by permitting . . . spouses to execute a complete settlement of all spousal interests in

each other's real and personal property and yet live together." *In re Estate of Tucci*, 94 N.C. App. 428, 438, 380 S.E.2d 782, 788 (1989). In this case, Plaintiff-husband argues that the postnuptial agreement provided an economic incentive to his Defendant-wife to leave the marriage and therefore was repugnant to public policy. The postnuptial agreement in this case transferred the property to the wife upon the signing of the agreement, whether the parties separated in the future had no effect on the terms of the agreement; thus, we hold that the agreement did not provide either party an incentive to end the marriage.

The facts show that Plaintiff, Henry Dunlap Dawbarn, Jr., and Defendant, Linda Kay Dawbarn married on 20 April 1985. On or about 25 August 1993, Defendant confronted Plaintiff about his involvement in an extramarital affair. Two days later, at Defendant's request, Plaintiff drafted a note stating his desire to transfer ownership of all three houses the couple jointly owned, with their contents, to Defendant. This transfer of property was to be construed as Plaintiff's good faith effort to stay in and continue to work on the marriage.

Subsequently, Plaintiff suggested having the agreement formalized by his attorney. Defendant responded that she already hired an attorney, Richard Rudisill, to represent her and preferred that they go to his office to formalize the agreement. On 30 August 1993, the couple met with Mr. Rudisill, and, after reviewing the Agreement at issue and the deeds at issue, Plaintiff signed the Agreement, deeds, and a memorandum of agreement. The Agreement states in relevant part:

> The parties hereto do contract and agree as follows: That since the marriage of the Parties, the property as is hereinafter specifically enumerated has been acquired or owned by either the Party of the First Part/Husband or the Party of the Second Part/Wife or both.

> That it is the contract and agreement of the Parties that from and after the date of this document, the property enumerated below will be the sole and separate property of the Party of the Second Part/Wife, free and clear of any right, title, claim, or interest of the Party of the First Part/Husband whatsoever, including but not limited to, claims pursuant to N.C.G.S. § 50-20 et seq, and the said Party of the First Part/Husband does hereby bargain, sell, convey and quitclaim unto Party of the Second Part/Wife all of his right, title and interest therein.

The Agreement transferred to Defendant the three homes purchased during the course of the marriage, all of the vehicles owned by the parties, and all of the furnishings in the homes. Plaintiff also assumed responsibility for all future costs associated with the homes, including, but not limited to, ad valorem taxes, repairs, and "redecorating costs and the like." At the time of the parties' execution of the Agreement, the property conveyed to Defendant was worth approximately $850,000.00. Defendant also specifically retained the right to pursue third parties through the legal system, and reserved all rights to make further claims pertaining to Plaintiff's separate property in the event there was a subsequent equitable distribution proceeding by either party at any time in the future. In January 1994, Plaintiff executed another deed convening a parcel of property to Defendant to complete the conveyance of the properties to her according to the Agreement. Plaintiff testified that this conveyance was free from "any kind of duress or coercion."

After the execution of the agreements, the parties lived together as husband and wife for more than nine years and did not treat the property as belonging solely to Defendant. In May 2003, Plaintiff asked Defendant to take out a loan on one of the pieces of property that Plaintiff had conveyed to her pursuant to the Agreement. Defendant refused, and, approximately two weeks later, the parties separated.

In August 2003, Plaintiff filed a lawsuit seeking to set aside the Agreement on the grounds of undue influence, fraud, duress, breach of a fiduciary duty, lack of consideration, and contravention of public policy. Following the depositions of both parties and the filing of several affidavits, Defendant moved the court to grant summary judgment on all claims raised in Plaintiff's complaint. After hearing oral arguments and reviewing the pleadings, deposition transcripts and affidavits tendered to the court, Judge Kimberly Taylor granted summary judgment in favor of Defendant on all claims advanced by Plaintiff in an order entered 8 October 2004. Plaintiff appeals to this Court.

---

"[T]he standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998) (citation omitted). Also, the evidence presented by the parties must be viewed in the light most favorable to the non-

movant. *Id.* The court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005).

[1] In his first argument on appeal, Plaintiff contends the trial court erred in granting Defendant summary judgment on his claim that the Agreement was void at its inception as against public policy. We disagree.

North Carolina General Statute section 52-10(a) provides in pertinent part:

> (a) Contracts between husband and wife not inconsistent with public policy are valid, and any persons of full age about to be married and married persons may, with or without valuable consideration, release and quitclaim such rights which they might respectively acquire or may have acquired by marriage in the property of each other; and such releases may be pleaded in bar of any action or proceeding for the recovery of the rights and estate so released.

N.C. Gen. Stat. § 52-10(a) (2005). Public policy "is not offended by permitting . . . spouses to execute a complete settlement of all spousal interests in each other's real and personal property and yet live together." *Tucci*, 94 N.C. App. at 438, 380 S.E.2d at 788. However, when an agreement provides an economic inducement to leave the marriage, it is void as against public policy. *Matthews v. Matthews*, 2 N.C. App. 143, 162 S.E.2d 697 (1968).

Plaintiff relies on this Court's decision in *Matthews* to support its contention that the Agreement violates public policy. *Id.* However, the facts in *Matthews* are quite distinguishable from the facts in this case. In *Matthews*, the contract at issue provided that the plaintiff had promised "that if I ever leave [the defendant], everything I have or will have will be hers to have and hold for the benefit of our children and herself[.]" *Id.* We held that this contract was void as against public policy because enforcing the agreement would "induce the wife to goad the husband into separating from her in order that the agreement could be put into effect[.]" *Id.* at 147, 162 S.E.2d at 699.

Here, there is no evidence in the record to suggest that the Agreement provided either party any economic inducement to leave

the marriage. Because the properties became Defendant's upon the signing of the Agreement, whether the parties separated in the future had no effect on the terms of the Agreement. Thus, neither party had an incentive to end the marriage under the Agreement. Moreover, Defendant testified that the purpose of the Agreement was to show a good faith effort by Plaintiff to stay in and continue to work on the marriage. Likewise, Plaintiff's own affidavit states that the Agreement encouraged him to stay in the marriage:

> That as a result of said Agreement, I felt that I had no choice but to remain married to Linda Kay Dawbarn, even though our marriage has been less than happy for quite some time in the recent past.

Where "it appears the execution of the Agreement was intended to *encourage* the parties to reconcile and improve their marriage[,]" public policy is not violated. *Tucci*, 94 N.C. App. at 438, 380 S.E.2d at 788 (emphasis in original). Because there is no evidence in the record to suggest that the Agreement would give either spouse an incentive to end the marriage, and, based on Plaintiff's affidavit and Defendant's deposition testimony, the execution of the Agreement encouraged the parties to reconcile and remain married, the Agreement does not violate public policy. We therefore find no merit in Defendant's first assignment of error.

[2] Plaintiff next argues the trial court erred in granting Defendant summary judgment on Plaintiff's claim that the Agreement was unconscionable, executed under duress, and that the agreement at issue should be rescinded. We hold that the trial court correctly granted summary judgment in favor of Defendant on the grounds that the statute of limitations barred Plaintiff's assertions of duress.

Preliminarily, we note that a postnuptial agreement, like any other contract, is not enforceable if it is "unconscionable or procured by duress, coercion, or fraud." *Knight v. Knight*, 76 N.C. App. 395, 398, 333 S.E.2d 331, 333 (1985) (citations omitted). A determination of unconscionability requires both procedural and substantive unconscionability. *King v. King*, 114 N.C. App. 454, 457-58, 442 S.E.2d 154, 157 (1994). Procedural unconscionability "involves bargaining naughtiness in the formation of the contract, i.e., fraud, coercion, undue influence, misrepresentation, inadequate disclosure." *Id.* To prove substantive unconscionability, "[t]he inequality of the bargain . . . must be so manifest as to shock the judgment of a person of common sense, and . . . the terms . . . so oppressive that no rea-

DAWBARN v. DAWBARN

[175 N.C. App. 712 (2006)]

sonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Id.* (quoting *Brenner v. Little Red School House, Ltd.*, 302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981)).

Under North Carolina law, there is a three-year limitation for filing an action for duress, undue influence and fraud. N.C. Gen. Stat. § 1-52(9) (2005). A cause of action for duress, undue influence and fraud accrues upon discovery by the aggrieved party of the facts constituting the fraud. *Id.* Courts in this jurisdiction have interpreted this language to mean that the "cause of action accrues when the wrong is complete, even though the injured party did not then know the wrong had been committed." *Davis v. Wrenn*, 121 N.C. App. 156, 158-59, 464 S.E.2d 708, 710 (1995) (internal quotation and citation omitted); *see also Baars v. Campbell Univ., Inc.*, 148 N.C. App. 408, 417-18, 558 S.E.2d 871, 876 (2002) (applying the date of having knowledge of an alleged undue influence as the date that a deed was executed and filed); *Biesecker v. Biesecker*, 62 N.C. App. 282, 286, 302 S.E.2d 826, 829 (1983) (holding that a wife was not entitled to claim duress more than three years after execution of the deed because the cause of action accrued when the husband threatened the wife with physical violence unless she signed the deed).

In this case, Plaintiff contends Defendant threatened to sue the person with whom he engaged in an extramarital affair unless he executed the Agreement on 30 August 1993. Because Plaintiff was aware of Defendant's alleged threats, any cause of action for fraud, duress or undue influence accrued at the time he signed the Agreement in 1993. Such claims are now barred by the three-year limitation set forth in section 1-52(9). Since a determination of unconscionability requires both procedural and substantive unconscionability, *King*, 114 N.C. App. at 457-58, 442 S.E.2d at 157, and we have found that Plaintiff's claims of procedural unconscionability are barred by the statute of limitations, we need not address Plaintiff's claim that the Agreement is substantively unconscionable. Therefore, the trial court properly granted Defendant summary judgment on Plaintiff's claim that the Agreement was unconscionable at its inception.

[3] In his final argument on appeal, Plaintiff contends the trial court improperly granted summary judgment on Plaintiff's claim that Defendant breached her fiduciary duty to Plaintiff by having the Agreement executed and seeking to enforce the Agreement more than nine years later. We disagree.

DAWBARN v. DAWBARN

[175 N.C. App. 712 (2006)]

The relationship between a husband and wife creates a fiduciary duty. *Sidden v. Mailman*, 150 N.C. App. 373, 376, 563 S.E.2d 55, 58 (2002) (quoting *Harton v. Harton*, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (1986)). Where a fiduciary relationship exists between spouses involved in a transaction, each spouse has a duty of full disclosure to the other. *Id.; see also Howell v. Landry*, 96 N.C. App. 516, 525, 386 S.E.2d 610, 615 (1989) (stating "[w]hen the parties to the agreement stand in a confidential relationship to one another, there must be full disclosure between the parties as to their respective financial status."). However, when one or both of the spouses are represented by legal counsel, the fiduciary relationship terminates. *Id.* at 376-77, 563 S.E.2d at 58. In the instant case, the fiduciary duty between Plaintiff and Defendant terminated when Defendant retained Mr. Rudisill to represent her in the transaction with Plaintiff. *See id.*

Moreover, even assuming *arguendo* that the fiduciary relationship between Plaintiff and Defendant did not terminate when Defendant retained legal counsel, Plaintiff does not point to any evidence in the record to show that Defendant failed to disclose any information that she should have disclosed pursuant to the fiduciary duty that she owed Plaintiff as her husband. Plaintiff testified that he knew that Mr. Rudisill and his law firm only represented Defendant, that the Agreement would affect significant legal rights with a long range effect, that he should consult an attorney before signing it, that he had adequate time to consider the Agreement, and that he signed the Agreement free from pressure and coercion. We therefore hold that Plaintiff's argument is without merit, and the trial court properly granted Defendant summary judgment on Plaintiff's breach of fiduciary duty claim.

Affirmed.

Judges STEELMAN and LEWIS concur.