STEVEN G. HOWELL v. MARY F. LANDRY

No. 8910DC217

(Filed 19 December 1989)

1. **Husband and Wife § 2.1 (NCI3d)— premarital agreement— order declaring invalid—findings and conclusions**

In a divorce action which declared invalid a premarital agreement, findings which were in fact conclusions that the wife had had insufficient time to discuss the agreement with an attorney and that negotiations between husband and wife resulted in only two minor adjustments in the agreement were not binding on the Court of Appeals because they were not supported by the findings. Other findings were accepted as conclusive on appeal where there was substantial evidence in the record supporting those findings, although some disagreement existed.

**Am Jur 2d, Husband and Wife §§ 283, 299.**

2. **Husband and Wife § 2.1 (NCI3d)— premarital agreement— invalidity of agreement—burden of proof**

In an action to enforce a premarital agreement executed prior to the enactment of N.C.G.S. Chapter 52B, the party claiming the invalidity of the agreement for reasons of undue influence, duress, fraud, unconscionability or inadequate disclosure has the burden of proof. Unlike the usual situation in which there is a dominant party who has the burden of showing the validity of the agreement, here there are two parties who are equally fiduciaries and equally beneficiaries and therefore the burden of demonstrating the invalidity of the premarital agreement is upon the person who would have it held invalid.

**Am Jur 2d, Husband and Wife §§ 313, 314.**

3. **Husband and Wife § 2.1 (NCI3d)— premarital agreement— defenses—necessity for pleading or litigation**

Although undue influence and duress were not affirmatively pled as defenses to a premarital agreement, the trial court addressed those issues without objection and the pleadings are regarded as amended to conform to the proof. As the defenses of unconscionability, fraud, and the statute of limita-

tions were neither pled nor litigated, those issues were not properly raised and will not be addressed on appeal.

**Am Jur 2d, Husband and Wife § 312.**

4. **Husband and Wife § 2.1 (NCI3d)— premarital agreement— duress and undue influence—burden of proof not met**

The wife did not meet her burden of proof in showing that a premarital agreement was executed under duress and undue influence where the parties agreed in early December 1979 to be married and the husband indicated that he would like to enter into a premarital agreement; the wife responded that she would be more than willing to look at the agreement; the parties agreed to be married in Las Vegas and the wife made arrangements to travel to Las Vegas for marriage on New Year's Day; the husband presented the wife with a premarital agreement at 8:00 p.m. on the evening before they were to leave for Las Vegas to be married on the next day; the agreement had been prepared by his attorney without the knowledge of the wife; the husband told the wife that they would not get married if the agreement was not signed; the wife told the husband that she should have an attorney of her own choosing review the document and indicated that she didn't want to sign; she nevertheless executed the agreement after making some adjustments because she very much wanted to get married and because of her financial involvement with his company; and at that time she had an active roll in the business of which the husband was a major stockholder. The shortness of the time interval between the presentation of the premarital agreement and the date of the wedding combined with the threat to call off the marriage if the agreement was not executed is insufficient per se to invalidate the agreement; moreover, the totality of the circumstances surrounding the execution of the agreement does not support a conclusion of duress and undue influence where the wife was aware that she should not sign the agreement without the advice of an attorney but proceeded to execute the agreement; it could not be presumed from the findings that she had insufficient time to seek the advice of an attorney had she decided to do so; the wife read the agreement which was not lengthy and in fact made some adjustments before signing; the husband did not threaten to terminate her employment if she refused to execute the agreement; and there was

HOWELL v. LANDRY

[96 N.C. App. 516 (1989)]

no finding that the failure to execute the agreement would have resulted in any loss of funds which may have been expended by the wife in preparation for the wedding.

**Am Jur 2d, Husband and Wife §§ 313, 314.**

5. **Husband and Wife § 2.1 (NCI3d)— premarital agreement— requirement of acknowledgment**

A premarital agreement was not invalid because it was never acknowledged where N.C.G.S. § 52-10, which at the time of execution of the agreement dealt with contracts between persons of full age about to be married and married persons, required acknowledgment only of those contracts executed during marriage. The validity of a premarital agreement is not affected by the lack of acknowledgment.

**Am Jur 2d, Husband and Wife § 286.**

6. **Husband and Wife § 2.1 (NCI3d)— premarital agreement— alimony provisions—no effect on property provisions**

Unenforceable provisions in a premarital agreement dealing with alimony did not affect the property provisions of the agreement because there is a presumption that provisions for property division and support payments are separable and there were no findings in the record to rebut that presumption.

**Am Jur 2d, Divorce and Separation § 19; Husband and Wife § 289.**

7. **Husband and Wife § 2.1 (NCI3d)— premarital agreement— conclusion that agreement identical to Equitable Distribution Act—distribution of property under Act—error**

The trial court erred by concluding that a premarital agreement was sufficiently identical to the Equitable Distribution Act to allow the trial court to distribute the property according to the Act despite the agreement. The Equitable Distribution Act did not exist at the time of the agreement's execution and the parties could not have intended that the Act cover their property division; furthermore, public policy permits spouses and prospective spouses to execute an agreement disposing of their property and the court should not ignore such agreements simply because of similarity to statutory provisions.

**Am Jur 2d, Divorce and Separation § 19; Husband and Wife § 289.**

HOWELL v. LANDRY

[96 N.C. App. 516 (1989)]

APPEAL by Steven G. Howell, defendant in 85CVD4312 and plaintiff in 85CVD5688, from judgments filed 28 June 1988 by *Judge Russell G. Sherrill, III* in WAKE County District Court. Heard in the Court of Appeals 20 September 1989.

*Womble Carlyle Sandridge & Rice, by Carole S. Gailor and Hoyt G. Tessener, for plaintiff-appellant.*

*Johnny S. Gaskins for defendant-appellee.*

GREENE, Judge.

Plaintiff husband appeals from an order declaring a premarital agreement invalid and dividing the property according to the Equitable Distribution Act. The husband and the defendant wife met in the summer of 1978 and began cohabiting in July or August, 1979. The wife has a Bachelor of the Arts degree in accounting and was employed by Gray Inc., the husband's business, as its corporate accountant and financial officer beginning sometime in 1979. In August 1979, she acquired about five percent of the outstanding shares of Gray Inc. stock.

The parties married on December 31, 1979 and separated on August 14, 1984. A divorce judgment was entered September 24, 1985.

Some disagreement exists as to the facts, but the trial court made the following findings of fact:

4. In early December, 1979, Landry and the defendant agreed to be married and agreed to marry in Las Vegas, Nevada at the end of the month because both of their divorces with their previous spouses would have been completed by that time and they were in love. Howell, at the beginning of December, 1979, indicated to Landry that he would like to enter into a premarital agreement. Landry indicated that she would be more than willing to look at an agreement but did not give any indication as to whether or not she would sign one. Howell never mentioned anything about any premarital agreement until the night before they were to get married.

5. In the meantime, both parties were telling their close friends that they would be getting married in Las Vegas at the end of December. Consequently, Landry made all of the arrangements to go to Las Vegas to get married on New Year's Day.

6. The next time that Howell mentioned anything about the premarital agreement was at approximately 8:00 p.m. on the evening before they were to go to Las Vegas the next day to get married.

7. Howell, unknown to Landry, had asked his lawyer to prepare a document entitled Premarital Agreement without consulting with Landry or asking her advice. The night when they got home from work, Howell in the kitchen, pulled two duplicate original documents from his suit pocket and showed them to Landry for the first time.

8. He told her that she was to sign the agreement and that if the agreement was not signed, they would not get married. Landry had no time to discuss the agreement with an attorney or anyone else because of the late time.

9. Landry had never seen a premarital agreement and did not know what should be in one. She told Howell that she felt that she should have an attorney of her own choosing look at it because the person who wrote it was Howell's personal attorney.

10. She indicated she did not want to sign the agreement but that because she very much wanted to get married and because of her financial involvement with the company, including lending the company money to survive and because the company was then her job, she, after making two minor adjustments to the agreement, signed it.

11. The agreement was not dated although it stated that it was made "on the date set out below." The agreement was not acknowledged by a Notary Public in accordance with NCGS 50-20(d), 52-10 or 52-10.1.

12. The document attempts to preclude the parties' right to receive alimony if otherwise eligible under the laws of North Carolina. The law of North Carolina is that alimony cannot be waived by a document in that such attempt by a party to force another to waive her rights is against public policy and as such any such attempt or document is therefore void.

13. The document in question does not contain a severability clause and, because the document contains a section that is void, the document as a whole is therefore also void.

14. The language of the document relating to separate property simply states that the parties would own their separate property. However, the language relating to separate property does not contain language in essence different than that found in the North Carolina Equitable Distribution Act, NCGS 50-20, *et seq.* As such, the court should still determine under the Equitable Distribution Act the separate and marital property of the parties and distribute the marital property as required by law notwithstanding the wording of the document.

15. The fair market value of the business in the form that it was at the time that the parties married on December 31, 1979, was zero. While the corporation did have assets of $500,000, it also had debts in the amount of $500,000. The total cash equity in the business was approximately $25,000, the amount of the money that Landry had put into the company.

16. Landry continued to take an active role in the company until the defendant fired her from her job as the financial controller of the company in January, 1984. She continued to work at home for the business until approximately July, 1984. The parties ultimately separated on or about August 15, 1984.

17. At all times during the course of marriage and for approximately one year prior to the marriage, Landry took an active role in the business as an employee and as a stockholder and as the wife of the major stockholder in the corporation. The business has appreciated in value from the net value of zero in December, 1979, to a net value of more than zero, the exact amount to be determined after further hearings.

18. Even if the business was separate property at the time of the marriage, Landry was actively involved with the business and is entitled to a marital share of the net value of the increase in the business worth from date of marriage to the date of separation.

The premarital agreement in pertinent part states:

WHEREAS the parties hereto intend to be married in the immediate future, and

WHEREAS each of the parties owns property individually the nature and extent of which has been disclosed to the other, and

WHEREAS the parties hereto desire that all property now owned or hereafter acquired by each party shall be free from any claim of the other party acquired as a result of the contemplated marriage,

It is therefore agreed:

1. *Separate Property.* After the solemnization of the marriage between the parties, each of them shall separately retain all rights in his or her own property, whether now owned or hereafter acquired, and each of them shall have the absolute and unrestricted right to dispose of such separate property, free from any claim that may be made by the other by reason of their marriage, and with the same effect as if no marriage had been consummated between them.

. . . .

4. *Support Claims.* In the event of a separation of the parties that would constitute grounds for divorce, and in the event of a divorce, each of the parties agrees to make no claim against the other for alimony, support or costs of any action to enforce such a claim.

The trial court's conclusions of law stated in pertinent part:

2. The document entitled Premarital Agreement was signed under undue influence and duress of the defendant Howell and is therefore void and of no effect.

3. The document entitled Premarital Agreement was not executed in accordance with the requirements of NCGS 50-20(d), 52-10 or 52-10.1 and is therefore not validly executed and is void and of no effect.

4. The document entitled Premarital Agreement was on its face to be effective "on the date set out below" and because the document was never dated, it is void and of no effect.

5. The document entitled Premarital Agreement contained a paragraph relating to waiver of alimony but did not contain a severability clause indicating that if one paragraph was void, the remaining paragraphs would not be void. As such because the alimony section is and was void as against public policy and there was no severability clause in the document, the entire document is void and of no effect.

6. The document entitled Premarital Agreement, even if it is valid, on its face does nothing more than recite the language of the North Carolina Equitable Distribution Act, NCGS 50-20, *et seq.*, and, as such, the court may still determine what is separate and marital property under the law of North Carolina. Furthermore, even if the property in question as of the date of marriage was separate property, any increase in the value of the property in question may be marital property because of Landry being actively involved in the business of which she is entitled to an equitable share under the North Carolina law.

---

The issues presented are: I) whether the evidence supports the factual findings; II) whether the trial court erred in finding the premarital agreement invalid because of (A) the circumstances of its execution, (B) a lack of acknowledgment, or (C) illegal alimony provisions; and III) whether the trial court erred in applying the Equitable Distribution Act because of its supposed similarity to the provisions of the premarital agreement.

I

[1] The husband argues that the trial court's findings of fact are not supported by the evidence. We disagree. "Findings of fact when supported by any evidence, are conclusive on appeal . . . . Conclusions of law, even if stated as factual conclusions, are reviewable." *Fairchild Realty Co. v. Spiegel*, 246 N.C. 458, 465, 98 S.E.2d 871, 876 (1957) (citations omitted). Although we may not question the facts found which were supported by the evidence, we are not bound by the conclusions or inferences drawn by the trial court. *Heath v. Kresky Mfg. Co.*, 242 N.C. 215, 218, 87 S.E.2d 300, 302-03 (1955).

The husband assigns error to "finding of fact" No. 8 in which the trial court stated "Landry had no time to discuss the agreement with an attorney or anyone else because of the late time." The husband also assigns error to "finding of fact" No. 10 where the trial court stated that the negotiation which occurred between the husband and the wife resulted only in two "minor" adjustments to the agreement. Since these two statements are conclusions rather than direct factual findings, we are not bound to accept them when they are not supported by the findings. In Finding No. 8, the trial court concluded that the wife had insufficient time to discuss

the agreement with an attorney. However, nowhere in the findings did the trial court state any facts indicating why the wife had no opportunity to discuss the agreement with a lawyer the following day before leaving for Las Vegas. Furthermore, the wife was not compelled by financial or other considerations to marry the next day, and she could have put off the marriage in order to discuss the agreement with an attorney. Regarding the so-called "minor" adjustments to the agreement as concluded in Finding No. 10, the trial court in the findings does not list the nature of these adjustments. Therefore, we have no way of determining from the findings whether the trial court's conclusion that they are minor is accurate. Accordingly, we are not bound by these conclusions, labeled by the trial court as findings of fact.

Also, we need not determine whether Findings Nos. 11, 12, 13 and 14 were supported by competent evidence since each of these findings also is a conclusion of law. We will address these legal conclusions later in this opinion. Regarding Findings Nos. 15, 16 and 17, we need not decide whether they are supported by competent evidence since the outcome here makes those findings irrelevant. Regarding Findings Nos. 4, 6, 7 and 9, we find they are supported by competent evidence. Although some disagreement exists as to the facts, there is substantial evidence existing in the record as to each of these findings, and they are accepted on appeal as conclusive. *Heating & Air Conditioning Associates v. Myerly*, 29 N.C. App. 85, 89, 223 S.E.2d 545, 548, *rev. denied, appeal dismissed*, 290 N.C. 94, 225 S.E.2d 323 (1976).

II

A

[2] Premarital agreements, like postmarital agreements, are generally formed within a confidential relationship. *Tiryakian v. Tiryakian*, 91 N.C. App. 128, 132, 370 S.E.2d 852, 854 (1988) (premarital agreement); *Eubanks v. Eubanks*, 273 N.C. 189, 195, 159 S.E.2d 562, 567 (1968) (separation agreement); *Joyner v. Joyner*, 264 N.C. 27, 32, 140 S.E.2d 714, 719 (1965) (confidential relationship terminated when wife employs counsel and deals through counsel with husband as adversary). Accordingly, transactions between such parties, according to *Eubanks*, must be free of fraud, undue influence and duress, and furthermore must also be fair and reasonable. 273 N.C. at 196, 159 S.E.2d at 567; *see also Link v. Link*, 278 N.C. 181, 193, 179 S.E.2d 697, 704 (1971).

HOWELL v. LANDRY

[96 N.C. App. 516 (1989)]

However, in *Knight v. Knight*, 76 N.C. App. 395, 333 S.E.2d 331 (1985), this court determined that courts should not review the *substantive* fairness of separation agreements, as they "should be viewed today like any other bargained-for exchange between parties who are presumably on equal footing." *Knight*, 76 N.C. App. at 398, 333 S.E.2d at 333; *see also Hill v. Hill*, 94 N.C. App. 474, 480-81, 380 S.E.2d 540, 545 (1989). As principles of construction applicable to contracts also apply to premarital agreements, *Turner v. Turner*, 242 N.C. 533, 539, 89 S.E.2d 245, 249 (1955), we are bound to apply the principles enunciated in *Knight* to premarital agreements. *See In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989) (one panel of Court of Appeals bound by another panel). Nonetheless, a *procedural* fairness inquiry is required. Neither premarital nor postmarital agreements are enforceable if "unconscionable or procured by duress, coercion, or fraud." *Knight*, 76 N.C. App. at 398, 333 S.E.2d at 333 (citations omitted). Furthermore, the agreement must be free of undue influence, *Curl v. Key*, 311 N.C. 259, 265, 316 S.E.2d 272, 276 (1984), and when the parties to the agreement stand in a confidential relationship to one another, there must be full disclosure between the parties as to their respective financial status. *See Tiryakian*, 91 N.C. App. at 132-33, 370 S.E.2d at 854-55.

As a matter of comparison, we note that effective for all premarital agreements executed after 1 July 1987 (the agreement here was executed in 1979), the party against whom enforcement of a premarital agreement is sought, in order to avoid the agreement, must prove:

(1) That party did not execute the agreement voluntarily; *or*

(2) The agreement was unconscionable when it was executed *and*, before execution of the agreement, that party:

   (i) Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

   (ii) Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

   (iii) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party

N.C.G.S. § 52B-7(a) (1987) (emphases added).

HOWELL v. LANDRY

[96 N.C. App. 516 (1989)]

In an action to enforce a premarital agreement executed prior to enactment of Chapter 52B, the party claiming the invalidity of the agreement for reasons of undue influence, duress, fraud, unconscionability or inadequate disclosure has the burden of proof. Unlike the usual situation existing in confidential relationships where there is a dominant party who has the burden of showing the validity of the agreement, *see McNeill v. McNeill*, 223 N.C. 178, 181, 25 S.E.2d 615, 617 (1943), we are here presented with two parties who are equally fiduciaries and equally beneficiaries and therefore the burden of demonstrating the invalidity of the premarital agreement is upon the person who would have it held invalid. *See Gant v. Gant*, 329 S.E.2d 106, 116 (W.Va. 1985); *see also* 1 *Valuation and Distribution of Marital Property*, § 4.11 (J. McCahey ed. 1989). This is consistent with the current Uniform Premarital Act, N.C.G.S. § 52B-7(a) (1987).

[3] As the defenses of undue influence, duress, fraud, unconscionability and inadequate disclosure are all affirmative in nature, they must be affirmatively pled. N.C.G.S. § 1A-1, Rule 8(c) (1983). This record does not reveal any such pleadings. However, as the trial court addressed the issues of duress and undue influence, without any objection from the husband, those issues were necessarily before the trial court for determination, and the pleadings are "regarded as amended to conform to the proof even though the defaulting pleader made no formal motion to amend." *Mangum v. Surles*, 281 N.C. 91, 98, 187 S.E.2d 697, 702 (1972). As the defenses of unconscionability, fraud and inadequate disclosure were neither pled nor litigated, those issues are not properly raised and will not be addressed by this court. *See In re Estate of Loftin and Loftin v. Loftin*, ₂285 N.C. 717, 723, 208 S.E.2d 670, 675 (1974).

We also note that the issue of whether the statute of limitations bars these defenses was not raised in the pleadings or at trial, and accordingly we do not address that issue. *See generally* N.C.G.S. § 1-52(9) (1983) (establishing three-year statute of limitations for fraud or mistake); *Swartzberg v. Reserve Life Insurance Co.*, 252 N.C. 150, 156, 113 S.E.2d 270, 276-77 (1960) (N.C.G.S. § 1-52(9) applies to "all forms of fraud, including deception, imposition, duress, and undue influence"); N.C.G.S. § 52B-9 (1987) (statute of limitations tolled during marriage).

[4] Duress and undue influence "are related wrongs" and

to some degree, overlap. They are, however, not synonymous . . . . Duress is the result of coercion. It may exist even though

HOWELL v. LANDRY

[96 N.C. App. 516 (1989)]

the victim is fully aware of all facts material to his or her decision. Undue influence may exist where there is no misrepresentation or concealment of a fact and the pressure applied to procure the victim's ostensible consent to the transaction falls short of duress.

*Link*, 278 N.C. at 191, 179 S.E.2d at 703 (citations omitted). Undue influence is the "fraudulent influence over the mind and will of another to the extent that the professed action is not freely done but is in truth the act of the one who procures the result." *Loftin*, 285 N.C. at 722, 208 S.E.2d at 674-75. Duress exists where one, by the unlawful or wrongful act of another, "is induced to make a contract or perform or forego some act under circumstances which deprive him of the exercise of free will." *Link*, 278 N.C. at 194, 179 S.E.2d at 705. An act is wrongful "if made with the corrupt intent to coerce a transaction grossly unfair to the victim and not related to the subject of such proceedings." *Id.* Relevant factors in determining if the victim was subject to undue influence and whether that person's will was actually overcome include "the age, physical and mental condition of the victim, whether the victim had independent advice, whether the transaction was fair, whether there was independent consideration for the transaction, the relationship with the victim and alleged perpetrator, the value of the item transferred compared with the total wealth of the victim, whether the perpetrator actively sought the transfer and whether the victim was in distress or an emergency situation." *Curl v. Key*, 64 N.C. App. 139, 142, 306 S.E.2d 818, 820 (1983), *reversed on other grounds*, 311 N.C. 259, 316 S.E.2d 272 (1984). In a general sense, actions taken by one voluntarily cannot be said to be given under duress or undue influence. *See* 25 Am.Jur. 2d *Duress and Undue Influence* § 3 at 357 (1966).

We next determine if the findings support the trial court's conclusion that the premarital agreement was secured by virtue of duress and undue influence exerted by the husband on the wife.

In summary form, the trial court's findings reveal that in the early part of December 1979 the parties agreed to be married and that the husband indicated to the wife before marriage that he would "like to enter into a premarital agreement." The wife responded that "she would be more than willing to look at the agreement." The parties had agreed to be married in Las Vegas, and the wife made the arrangements to travel to Las Vegas for

marriage on New Year's Day. At 8:00 p.m. on the evening before the parties were to leave for Las Vegas to be married on the next day, the husband presented to the wife a premarital agreement which had been prepared by his attorney, without the knowledge of the wife. The husband told the wife that "if the agreement was not signed, they would not get married." The wife told the husband that "she felt she should have an attorney of her own choosing" to review the document and indicated that she "did not want to sign the agreement." However, as "she very much wanted to get married and because of her financial involvement with the company," she nevertheless executed the agreement after making some adjustments to it. At the time the premarital agreement was executed, the wife had an active role in the business of which the husband was a major stockholder.

The wife primarily argues that the presentation of the premarital agreement to her on the day before the wedding, combined with the threat that the marriage would not take place unless the document was executed, amounted to duress and undue influence. We disagree.

The mere shortness of the time interval between the presentation of the premarital agreement and the date of the wedding is insufficient alone to permit a finding of duress or undue influence. *See* 1 *Valuation and Distribution of Marital Property*, § 4.10[2][c]. Some states, but not North Carolina, require that premarital agreements be executed at least a minimum amount of time prior to the marriage. *See* Delaware Code, Title 13, § 301 (at least ten days before the marriage); Minnesota Stat. Ann. § 519.11 (prior to day of marriage). The shortness of the time interval when combined with the threat to call off the marriage if the agreement is not executed is likewise insufficient per se to invalidate the agreement. 1 *Valuation and Distribution of Marital Property*, § 4.10[2][c] at 4-85.

The facts in this case are distinguishable from the facts in *Link* where the court determined that there was evidence of duress where the husband threatened to take the house and the children from the wife unless she agreed to transfer to him her interest in the house and in the stock. 278 N.C. at 193-94, 179 S.E.2d at 704. Here, the threat to cancel the marriage and the execution of the premarital agreement were closely related to each other. The marriage would have redefined the respective property rights

of the parties, and the premarital agreement would have avoided that redefinition to some extent. Indeed, the cancellation of a proposed marriage would be a natural result of a failure of a party to execute a premarital agreement desired by the other party. These facts should be contrasted with the facts in *Link* where the husband's threat to take custody of the children was unrelated to the agreement that was ultimately executed dealing with the wife's transfer of her interest in the stock and in the house.

Having determined the absence of facts giving rise to per se duress or undue influence, we now must determine if the totality of the circumstances surrounding the execution of the premarital agreement supports a conclusion of duress or undue influence. We find no such evidence. In fact, the evidence is to the contrary. The wife, aware that she should not sign the agreement without the advice of an attorney, proceeded in any event to execute the agreement. Neither party was obligated to be married. *See DeLorean v. DeLorean*, 511 A.2d 1257, 1259 (N.J. Super. Ct. Ch. Div. 1986) ("While it may have been embarrassing to cancel the wedding only a few hours before it was to take place, she certainly was not compelled to go through with the ceremony."). We cannot presume from the findings that the wife had insufficient time to seek advice of an attorney had she decided to do so. The premarital agreement was presented to the wife at 8:00 p.m. on the night before the parties were to leave for Las Vegas. The findings are not specific as to the time the parties were to be married on the next day. The wife had read the agreement which was not lengthy and in fact made some adjustments in the agreement before signing. The husband did not threaten to terminate the wife's employment with Gray, Inc. if she had refused to execute the agreement. There is no finding that the failure to execute the premarital agreement would have resulted in any loss of funds which may have been expended by the wife in preparation for the wedding.

Accordingly, we determine the wife has not met her burden of proof, and the findings are insufficient to support the trial court's conclusion that the premarital agreement was executed under duress and undue influence. Therefore, the order declaring the premarital agreement void for the reasons of duress and undue influence is reversed.

B

[5] The wife also argues we should find the premarital agreement invalid since it was never "acknowledged." Had the agreement

been executed after 1 October 1981, this issue would be determined by the Equitable Distribution Act which provides in pertinent part:

> Before, during or after marriage the parties may by written agreement, duly executed and acknowledged in accordance with the provisions of G.S. 52-10 and 52-10.1, or by a written agreement valid in the jurisdiction where executed, provide for distribution of the marital property in a manner deemed by the parties to be equitable and the agreement shall be binding on the parties.

N.C.G.S. § 50-20(d) (1987).

N.C.G.S. § 52-10 provides in pertinent part that:

> No contract or release between husband and wife made during their coverture shall be valid to affect or change any part of the real estate of either spouse, or the accruing income thereof for a longer time than three years next ensuing the making of such contract or release, unless it is in writing and is acknowledged by both parties before a certifying officer.

N.C.G.S. § 52-10(a) (1984). Since § 52-10 requires acknowledgment only during coverture, the period of marriage, it does not require acknowledgment for premarital agreements.

The agreement at issue was executed in 1979, and no statutory requirement for acknowledgment existed then either. N.C.G.S. § 52-10, which then also dealt with contracts between "persons of full age about to be married and married persons . . . ," required acknowledgment only of those contracts executed during marriage. N.C.G.S. § 52-10 (1977). We find this omission to be a significant indication that the Legislature did not intend to require parties to a premarital agreement to formally acknowledge the agreement. Also, the language of the statute should be given its clear effect, which is not to require acknowledgment of premarital agreements.

The wife argues that case law placed an acknowledgment requirement on premarital agreements, citing *Turner v. Turner*, 242 N.C. 533, 89 S.E.2d 245 (1955), and *In re Estate of Loftin and Loftin v. Loftin*, 285 N.C. 717, 208 S.E.2d 670 (1974). However, neither of these cases explicitly requires acknowledgment of premarital contracts. In *Turner*, the court simply noted that acknowledgment occurred. 242 N.C. at 536, 89 S.E.2d at 247. In *Loftin*, the agreement at issue actually was executed during mar-

riage, and the court reviewed it as such. 285 N.C. at 721, 208 S.E.2d at 673-74. Furthermore, the *Loftin* Court stated as follows:

> We also observed in passing that the Court of Appeals used language which seemed to interpret our decision in *Turner v. Turner*, 242 N.C. 533, 89 S.E.2d 245, to *require* that an antenuptial agreement satisfy the provisions of G.S. 52-6. It appears to us that this court in *Turner*, while considering the total circumstances surrounding the execution of the antenuptial agreement, merely *observed* that the Clerk of Superior Court of Gates County did conduct a privy examination incorporating in its certificate the statement that the Agreement was not unreasonable or injurious to the *femme* contractor.

*Loftin*, 285 N.C. at 723, 208 S.E.2d at 675 (emphases in original).

The *Loftin* Court went on to hold that the acknowledgment or certification requirement of N.C.G.S. § 52-6, a predecessor of § 52-10, did not apply to antenuptial agreements. 285 N.C. at 723-24, 208 S.E.2d at 675. We conclude that the validity of a premarital agreement is not affected by the lack of acknowledgment.

Although the Uniform Premarital Agreement Act is inapplicable here, we note that it does not require acknowledgment of premarital agreements. N.C.G.S. § 52B-3.

## C

[6] The wife also argues that the entire premarital agreement is invalid because of the illegality or invalidity of its alimony provisions. A premarital agreement concerning alimony is void as against public policy. *Motley v. Motley*, 255 N.C. 190, 193, 120 S.E.2d 422, 424 (1961). The husband does not dispute the unenforceability of the alimony provisions, but he asserts the property provisions are severable from the alimony provisions. He cites *Rose v. Vulcan Materials Company*, 282 N.C. 643, 658, 194 S.E.2d 521, 531-32 (1973), for the general proposition that "[w]hen a contract contains provisions which are severable from an illegal provision and are in no way dependent upon the enforcement of the illegal provision for their validity, such provisions may be enforced."

There is a presumption that "the provisions for property division and support payments are separable." *Rowe v. Rowe*, 305 N.C. 177, 184, 287 S.E.2d 840, 844 (1982). As there are no findings in this record to rebut that presumption, we determine the wife

has failed in her burden of proof, and the invalidity of the alimony provision does not affect the property provisions of the agreement. *See Small v. Small*, 93 N.C. App. 614, 621, 379 S.E.2d 273, 277, *rev. denied*, 325 N.C. 273, 384 S.E.2d 579 (1989) (alimony provisions of postmarital agreement are severable from the property division provisions).

## III

[7] The husband also argues the trial court erred in concluding that the premarital agreement was sufficiently identical to the Equitable Distribution Act to allow the trial court to distribute the property according to the Act despite the premarital agreement. We agree. Premarital agreements, like all contracts, must be interpreted according to the intent of the parties. The Equitable Distribution Act did not exist at the time of the agreement's execution, and thus the parties could not have intended that the Equitable Distribution Act govern their property division. Furthermore, public policy of North Carolina permits spouses and prospective spouses to execute an agreement disposing of their property at any time, and a court should not ignore such agreements simply because of its supposed similarity to statutory provisions. *See Buffington v. Buffington*, 69 N.C. App. 483, 488, 317 S.E.2d 97, 100 (1984).

The husband also argues that the trial court erred in concluding that the premarital agreement was void because it lacked a specific date. Since the wife concedes that the trial court erred in that respect and declined to argue the issue, we need not discuss it.

As we have determined the trial court erred in voiding the premarital agreement for the reasons asserted and assigned as error, we reverse the judgment below and remand the cause for distribution pursuant to the Equitable Distribution Act to the extent any properties the parties may own are not covered by the premarital agreement.

· Reversed and remanded.

Judges EAGLES and PARKER concur.