881 P.2d 727

**Albert O. LEBECK, Jr.,
Petitioner–Appellee,**

v.

**Bonnie A. LEBECK, Respondent–
Appellant.**

**No. 14889.**

Court of Appeals of New Mexico.

July 29, 1994.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, for petitioner-appellee.

Michael L. Danoff, Kim E. Kaufman, Albuquerque, for respondent-appellant.

*OPINION*

MINZNER, Chief Judge.

Wife appeals from a final judgment granting a divorce that upholds the validity of a prenuptial agreement and denies Wife an award of alimony or community property. She claims error in (1) the denial of spousal support; (2) the upholding of the prenuptial agreement; (3) the denial of an award of community property; and (4) the award of attorney fees. We affirm.

*FACTS*

Bonnie (Wife) and Albert (Husband) Lebeck had been married for eight years at the time of their divorce. Prior to marrying, the couple lived together for about three years. When the couple began living together in May 1978, Husband was a fifty-three-year-old lawyer who did not practice law full-time, but whose main income was from inherited investments. Husband had four children from a previous marriage. Wife was thirty-three years old, had a bachelor of arts degree in journalism, and had worked for the *Gallup Independent* as city editor for seven years. She also had previously been married, and Husband served as Wife's attorney in her divorce from her first husband. In 1979, after living together for a year, the couple had a child.

About two and a half years later, Husband and Wife decided to get married. Some days prior to the wedding, Husband asked Wife if she would sign a prenuptial agreement. Husband prepared the agreement, to which he attached a list of his separate property assets and their value. He asked Wife to review the agreement with an attorney of her choice and have the attorney send Husband a letter verifying that they had gone over the agreement and that Wife understood it. She did so and signed the agreement. They married and Wife continued to write part-time, devoting the majority of her time to being a mother and homemaker. Husband continued to practice law part-time, receive director fees from both a family business and a bank, and receive various commissions for real estate transactions. The couple's living expenses during the marriage exceeded Husband's income from the law practice, director fees, and commissions. As a result, Husband spent a substantial amount of his separate income on the marital community.

In 1989, Husband filed for divorce. Wife took a job with the Arizona Bar Association, and she and the couple's daughter moved to Scottsdale. The issues of child custody, visitation, and support were resolved by the parties and are not issues on appeal. The parties stipulated that Wife needed interim spousal support immediately following the filing of the action. During the three years that the action was pending, Wife worked full-time, and at the time of trial she had a monthly take-home income of $1,080.

*DISCUSSION*

■ Wife initially argues that the trial court's findings regarding spousal support do not reflect consideration of the appropriate factors. We disagree. New Mexico cases indicate that the threshold question for the award of spousal support is need. *Hall v. Hall,* 114 N.M. 378, 385, 838 P.2d 995, 1002 (Ct.App.), *cert. denied,* 114 N.M. 314, 838 P.2d 468 (1992); *Foutz v. Foutz,* 110 N.M. 642, 643, 798 P.2d 592, 593 (Ct.App.1990).

■ Wife requested a finding that she needed and should receive spousal support. However, the trial court made an express finding that Wife had needed the interim spousal support provided by Husband for three years, but that spousal support was inappropriate following the divorce. Substantial evidence supports this finding. Wife was forty-six years old, had a degree in journalism and a history of employment in that field, and was employed and receiving take-home pay of $1,080 per month at the time the trial court made its findings. In addition to her income, Wife receives $1,423.19 per month in child support from Husband.

■ Wife argues that she submitted numerous requested findings of fact regarding the parties' finances and that the trial court should have considered all the factors she raised in determining whether there was a need for spousal support. However, having determined that Wife had sufficient funds to meet her needs and therefore did not require spousal support, the trial court did not need

to consider additional factors. *See Foutz,* 110 N.M. at 643, 798 P.2d at 593. The additional factors would have been relevant in calculating the amount of spousal support to be awarded if the trial court had determined that there was a need for continued support. *See Lewis v. Lewis,* 106 N.M. 105, 115–16, 739 P.2d 974, 984–85 (Ct.App.1987). Since the trial court determined that there was no need for spousal support, it was not required to consider additional factors.

Wife also asserts that the record indicates the trial court considered inappropriate factors, reveals bias, and therefore supports a conclusion that the court abused its discretion. Prior to filing findings and conclusions and a final decree, the trial court filed a minute entry, a five and a half page document summarizing its conclusions on each of the major issues. In discussing alimony, the court made the statement that "Mrs. Lebeck is an intelligent and articulate college-educated woman with additional attributes of being attractive, and on observation from several court appearances, possessed of exceptional good taste in attire." Wife asserts that the trial court is implying that her chance of securing another husband is a factor it considered in determining whether to award spousal support. Husband answers that the comments were directed toward assessing Wife's employability. Husband also argues that even if the comments were erroneous, the judgment should still be affirmed because the decision on spousal support was based on other proper factors.

■ While this case was pending on appeal, our Supreme Court approved guidelines that are relevant to the facts of this case. In conjunction with the New Mexico State Bar Standing Committee on Women and the Legal Profession, the Supreme Court recently published a handbook discussing gender bias. *Handbook on Gender Equality in the Courts: A Guide for Court Conduct in All New Mexico Courts* (1994). The Handbook acknowledges that gender bias may manifest itself unintentionally and may arise in common forms of speech, but it also recognizes the judiciary's obligation to make special efforts toward a bias-free environment. *Id.* at 3–5. The Handbook specifically lists as conduct to

be avoided: "Comment on the physical appearance of others." *Id.* at 5. Had this clear guideline been published earlier, undoubtedly the trial court would have framed the minute order differently. The Handbook offers suggestions that will be useful in avoiding unintentional, as well as intentional, manifestations of gender bias in the future. We believe that the trial court should have drafted the minute order more carefully, even though it was prepared prior to the publication of the Handbook. Nevertheless, we agree with Husband that the trial court listed sufficient proper factors to support its decision regarding spousal support, and that in context the remarks are part of a paragraph similar to the discussion of employability contained in *Blake v. Blake,* 102 N.M. 354, 364, 695 P.2d 838, 848 (Ct.App.1985).

■ Erroneous findings of fact unnecessary to support the judgment of the court are not grounds for reversal. *Specter v. Specter,* 85 N.M. 112, 114, 509 P.2d 879, 881 (1973). Further, a trial court's verbal comments can clarify an ambiguous finding, but they do not provide a basis for reversal. *Ledbetter v. Webb,* 103 N.M. 597, 604, 711 P.2d 874, 891 (1985). Whether we view the minute entry as containing an unnecessary finding or as a verbal remark that should not affect valid findings, its presence in this record does not establish reversible error. The reference to Wife's appearance does not by itself establish that the trial court considered inappropriate factors, and thus does not support a conclusion that the trial court abused its discretion in denying spousal support. *Compare Blake,* 102 N.M. at 364, 695 P.2d at 848 (no abuse of discretion for trial court to consider such factors as wife's education, personality, and entree to prominent social circles in determining alimony) *with Hertz v. Hertz,* 99 N.M. 320, 326, 657 P.2d 1169, 1175 (1983) (judge's findings revealed reliance on inappropriate factors, and record showed spouse seeking alimony was neither in need nor entitled to alimony when appropriate factors considered). We need not decide in this case what additional evidence would have been necessary to establish the basis for a remand. *Cf. Salter v. Jameson,* 105 N.M. 711, 714, 736 P.2d 989, 992 (Ct.App.) (remand for entry of

revised findings that exclude a theory of liability for which there was insufficient evidence), *cert. denied,* 105 N.M. 720, 737 P.2d 79 (1987).

Wife further argues that at trial Husband's attorney conceded that Wife needed $600 a month in spousal support to meet her expenses. That concession, Wife asserts, precludes Husband from now arguing that spousal support should not be awarded because she relied on that concession for the remainder of the trial.

The first case cited by Wife to support her position concerns a husband being precluded from appealing the award of spousal support when his requested findings and conclusions contained a provision for spousal support. *See Cox v. Cox,* 108 N.M. 598, 602–03, 775 P.2d 1315, 1319–20 (Ct.App.), *cert. denied,* 108 N.M. 624, 776 P.2d 846 (1989). *Cox* is distinguishable. Husband requested findings providing for temporary rather than permanent spousal support and he amended those findings to eliminate any request for support prior to the trial court's final decree.

■ Wife's second case concerns the waiver of a known right which does not fit the facts of this case. *See Miller v. Phoenix Assur. Co.,* 52 N.M. 68, 71–72, 191 P.2d 993, 995 (1948). However, in light of this citation and Wife's contention that she relied on the concession during trial and would suffer prejudice if the admission is permitted to be withdrawn, we will consider her argument as a theory of judicial admission.

■ A judicial admission is [a]n express waiver made in court ... by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact ... [which] is thereafter to be taken for granted; so that the one party need offer no evidence to prove it and the other is not allowed to disprove it.

9 John H. Wigmore, *Evidence in Trials at Common Law* § 2588 (James H. Chadbourn rev. 1981). "It is of the nature of an admission, plainly, that it be by intention an act of waiver relating to the opponent's proof of the fact and not merely a statement of assertion or concession made for some independent purpose." *Id.* at § 2594(2) (footnote omit-

ted). If the statement is ambiguous it is presumed not to be a judicial admission. *Baxter v. Gannaway,* 113 N.M. 45, 50, 822 P.2d 1128, 1133 (Ct.App.), *cert. denied,* 113 N.M. 16, 820 P.2d 1330 (1991). Neither is a statement of opinion a judicial admission. A judicial admission must be a statement of fact within the speaker's personal knowledge. *Derby Meadows Util. Co. v. Inter–Continental Real Estate,* 202 Ill.App.3d 345, 147 Ill. Dec. 646, 651, 559 N.E.2d 986, 991 (1990). The context in which a statement is made must be considered when determining whether a statement is a judicial admission. *Baxter,* 113 N.M. at 50, 822 P.2d at 1133. Also, the doctrine of judicial admission should not be applied when it is unclear which issue the party making the statement intended that statement to address. *Fletcher v. Eagle River Memorial Hosp., Inc.,* 156 Wis.2d 165, 456 N.W.2d 788, 793 (1990). Finally, it is clearly within the trial court's discretion whether a statement or purported concession should be treated as a judicial admission. *See* Wigmore, *supra,* at §§ 2590, 2591.

■ Applying the above principles to the facts before us, we determine that the statement made by Husband's attorney during trial was not a judicial admission. Counsel's concession that Wife needed $600 a month support was in reference to a trial court order concerning temporary support. There was no statement by Husband that there should be an award of permanent support in that or any other amount. To the contrary, Husband was arguing to the court that Wife had not met the threshold test of proving her need for permanent support. Husband's argument and the context of the statement indicate that he intended his statement to go only to the temporary spousal support being given to Wife. The statement was neither a clear, unambiguous, unequivocal statement that Wife should receive $600 a month in permanent spousal support nor a statement of fact known to Husband personally.

Wife next argues that the trial court erred in determining the prenuptial agreement was valid. The following undisputed evidence was before the trial court. Wife and Husband lived together for three years before they married. Wife was aware of Husband's

business and financial situation prior to their marriage. Wife was approximately thirty-four years old at the time of the marriage. Wife had a college degree in journalism from the University of Wisconsin. Wife and Husband married in order to assure that their two-year-old daughter would legally have Husband's name so that problems at school would be avoided. Husband would not have entered into marriage without a prenuptial agreement. Husband drafted the prenuptial agreement, asked Wife to have it reviewed by an attorney of her choice, and then to either sign the agreement or let Husband know what part was not acceptable to her. After consulting an attorney of her choice, who explained the agreement to her and informed her of its effects on her legal rights, Wife signed the agreement.

 Although the parties suggest that we review the findings for substantial evidence, we think on this record the issue is whether the trial court could have found that Wife failed to carry her burden of proving that the agreement was invalid by a preponderance of the evidence. *See Trujillo v. City of Albuquerque*, 116 N.M. 640, 648–49, 866 P.2d 368, 376–77 (Ct.App.) (Hartz, J., concurring in part, dissenting in part) (proper standard of appellate review when evaluating sufficiency-of-the-evidence contention made on appeal by a party with the burden of proof is whether it was rational for the fact-finder to find against this party), *cert. denied* 116 N.M. 364, 862 P.2d 1223 (1993); *see also Sosa v. Empire Roofing Co.*, 110 N.M. 614, 616, 798 P.2d 215, 217 (Ct.App.1990) (when reviewing a finding made against the party with the burden of proof, appellate court can affirm if it was rational for the fact-finder to disbelieve the evidence offered in support of the finding); *Luchetti v. Bandler*, 108 N.M. 682, 684–85, 777 P.2d 1326, 1328–29 (Ct.App.) (trial court not bound to accept a witness's version of the facts), *cert. denied*, 108 N.M. 681, 777 P.2d 1325 (1989). We conclude that the trial court did not err in so finding.

 A prenuptial agreement is a contract. *Simeone v. Simeone*, 525 Pa. 392, 581 A.2d 162, 165 (1990). Earlier decisions on prenuptial agreements applied different rules in analyzing a prenuptial agreement than in analyzing other contracts. Those decisions "rested upon a belief that spouses are of unequal status and that women are not knowledgeable enough to understand the nature of the contracts that they enter." *Id.* More recent cases rest on different premises. The following common law rules illustrate these premises:

(1) The proponent has the obligation of establishing the existence and terms of the agreement, as would be the situation regarding any other contract.

(2) Where the agreement appears fair and reasonable on its face, the party claiming the invalidity of the agreement, or a particular provision, bears the burden of establishing the impropriety of the agreement or clause.

(3) If the agreement appears unfair on its face, the burden of proof shifts to the proponent to prove the validity of the agreement, particularly including that the opponent had full knowledge of the financial and other relevant circumstances, either as a result of the proponent's disclosure, or the opponent's independent knowledge.

Alexander Lindey & Louis I. Parley, 3 *Lindey on Separation Agreements and Antenuptial Contracts* § 90.12 at 90–106 (1994) [hereinafter *Lindey* ]; *Howell v. Landry*, 96 N.C.App. 516, 386 S.E.2d 610, 616 (1989) (burden is on the person seeking to hold the agreement invalid), *review and dismissal denied*, 326 N.C. 482, 392 S.E.2d 90 (1990). The Uniform Premarital Agreements Act has altered these tests by placing the burden solely on the opponent of the agreement, with no shift being made for an agreement being " 'unfair on its face.' " *Lindey, supra* at 90–108. We note that "it is apparent that in the next several decades debate will continue to rage concerning the proper function of reviewing courts in resolving the extent to which the special incidents of the premarital relationship should alter traditional contract analysis." 5 Samuel Williston, *A Treatise on the Law of Contracts* § 11:8, at 478 (Richard A. Lord ed., 4th ed. 1993).

 The prevailing standard of proof, regardless of who bears the burden, is a " 'preponderance of the evidence.' " *Lindey,*

*supra* at 90–108. Further, a procedural fairness inquiry is appropriate in determining whether the party claiming invalidity has made a prima facie showing. *Howell*, 386 S.E.2d at 615. Procedural fairness is the only inquiry necessary to resolve the issues raised in this appeal.

In the present case, Wife claims that she signed the agreement as a result of undue influence, coercion, overreaching, and misrepresentations exerted by Husband. She offers as proof of this claim the fact that she wanted to marry to "legitimize" her daughter, so when Husband presented her with the agreement he had drafted several days prior to the wedding and told her he would not marry her without such an agreement being in place, she felt she had to sign it.

 The fact that Husband personally drafted the agreement does not indicate that the agreement was unfair or improper, particularly where, as here, Wife had it reviewed by independent counsel. Neither is the short amount of time between executing the agreement and the date of the wedding sufficient to demonstrate that Husband was exercising undue influence, coercion, or overreaching. "The mere shortness of the time interval between the presentation of the premarital agreement and the date of the wedding is insufficient alone to permit a finding of duress or undue influence." *Id.* 386 S.E.2d at 617. We thus conclude that the short time interval and Husband's statement that he would not marry without a prenuptial agreement are not sufficient in themselves to compel a finding that the agreement was unfair.

 Wife further claims that Husband's actions forced her to sign the agreement under duress. We are not persuaded. A lawful demand or a threat to do that which the demanding party has a right to demand is not sufficient to support a claim of duress. *Liebelt v. Liebelt*, 118 Idaho 845, 801 P.2d 52, 55 (App.1990). "A threat to do a legal act or subject the party to the legal consequences of a refusal to make an agreement, is not duress...." *McDonald v. Carlton*, 1 N.M. 172, 177 (1857).

 The trial court was also entitled to reject Wife's claim that she was subjected to Husband's undue influence. "Undue influence is proven by showing that a person who has mental capacity to understand, and does understand, what he is doing, and is compelled by artifice, force or fear to do, what he does not want to do, and what he would not otherwise do but for such influence." *Liebelt*, 801 P.2d at 55. Wife argues that the agreement lacked consideration and was an unjust or unnatural disposition of property, and that is sufficient to raise a presumption of undue influence. We agree with Husband that the mutual covenants allowing each party to protect his or her separate estate are sufficient consideration. For reasons similar to those explained above, we are unable to conclude that Husband's threat of refusal to marry absent an executed prenuptial agreement would constitute "compelling by artifice, force or fear." We cannot conclude that the trial court was compelled to find "undue" influence.

 Additionally, in keeping with the trend to apply traditional contract analysis to issues involving premarital agreements, there is a trend toward allowing the agreement to stand, even if one party has given up all his or her rights in the property of the other. *See Newman v. Newman*, 653 P.2d 728, 733 (Colo.1982) (en banc). In *Newman*, the Colorado Supreme Court wrote concerning facts which are similar to the facts of the present case:

> Once the stringent tests of full disclosure and lack of fraud or overreaching are met, the parties are free to agree to any arrangement for division of their property, including a waiver of any claim to the property of the other.... [W]e are aware that [Wife] in effect gave up substantial rights to marital property. However, she was a mature person who had once before been through the financial difficulties of a divorce.... And, she freely made the decision with full knowledge that her husband was a person of substantial wealth.

*Id.* In this case, the trial court made findings that "Husband made a full disclosure to Wife, prior to the time she executed the Premarital Agreement, as to the nature and extent of his property," and that "Wife signed the Premarital Agreement freely and

voluntarily after consulting an attorney of her choice who explained her legal rights to her." Substantial evidence supports these findings. We conclude the trial court could have found that Husband satisfied any burden of proof arising as a result of the terms of the agreement.

Thus, we conclude that the trial court was entitled to find that Wife failed to carry her burden of proof in attacking the agreement, and the trial court properly ruled that the prenuptial agreement controlled disposition of the marital property. Wife's additional arguments for an award of community property fail under the terms of the prenuptial agreement, which specifically included all earnings of the parties to the agreement.

■ Finally, Wife argues that the trial court erred both in awarding attorney fees which were considerably less than those requested at trial and in failing to enter specific findings on relevant factors to support the award. Because Wife did not request findings on the specific factors she identified, she cannot on appeal claim that the trial court failed to enter findings on the proper factors. *Apodaca v. Payroll Express, Inc.*, 116 N.M. 816, 825, 867 P.2d 1198, 1207 (Ct.App.1993); SCRA 1986, 1–052(B)(1)(f) (Repl.1992) (a party will waive specific findings of fact and conclusions of law if he fails to make a general request therefor in writing, or if he fails to tender specific findings and conclusions).

■ The standard of review on an appeal of an award of attorney's fees is that such an award will be upheld unless it constitutes an abuse of discretion. *Hakkila v. Hakkila*, 112 N.M. 172, 179, 812 P.2d 1320, 1327 (Ct.App.), *cert. denied*, 112 N.M. 77, 811 P.2d 575 (1991). Husband takes the position that the majority of the fees requested by Wife were spent in pursuit of the community property claim which was foreclosed by the prenuptial agreement. Wife states that her legal argument attempted to expand the law, because she urged the trial court to impute income to Husband by analogizing the child support obligation when a parent chooses to be underemployed to Husband's obligations to the community by having chosen to be underemployed. Thus, she contends, additional attorney fees should have been award-ed. Since the prenuptial agreement specifically controlled the parties' earnings, the trial court properly determined that the foregoing argument lacked merit. In its award of attorney fees the trial court indicated that it was familiar with the fees connected with this kind of case. The court went on to state that it was going to award $2,800 in attorney fees for the preparation of those issues in Wife's case in which the court found merit. We conclude that the trial court did not abuse its discretion in its award of attorney fees.

*CONCLUSION*

The trial court considered the proper factors when determining that Wife should not receive spousal support, and it was entitled to conclude that she failed to carry her burden of proof in challenging the prenuptial agreement. Because the agreement was valid, the court properly ruled against Wife's community property claims. The trial court did not abuse its discretion in its award of attorney fees. Therefore, we affirm its decision.

IT IS SO ORDERED.

APODACA and PICKARD, JJ., concur.