Brentwood Family Division
No. 2000-556

IN THE MATTER OF JANICE YANNALFO AND GARY YANNALFO

Argued: January 3, 2002
Opinion Issued: April 16, 2002

*Steven G. Shadallah*, of Salem, by brief and orally, for the petitioner.

*Finbury & Sullivan, P.C.*, of Haverhill, Massachusetts (*John C. Sullivan* on the brief and orally), for the respondent.

BROCK, C.J. The respondent, Gary Yannalfo, appeals from a decision of the Family Division (*Maher*, J.) alleging that the court erred as a matter of law when it voided an antenuptial agreement entered into by the parties. For the reasons that follow, we agree and reverse.

The following facts are supported by the record. The parties were married in July 1987. Approximately one month before the wedding, they purchased a home for $183,150. The respondent provided $70,000 as the down payment and the petitioner contributed $5,000 toward closing costs. A day or so before the wedding, the respondent presented the petitioner with an antenuptial agreement for her signature. The agreement was narrowly drawn, pertaining only to the respondent's $70,000 down payment. It provided that the first $70,000 in equity in the home was the separate property of the respondent. It also stated that in the event of a divorce, the real estate would be sold and the first $70,000 would be paid to the respondent. After the respondent told the petitioner that he would not marry her unless she executed the agreement, she took it to work the next day and signed it before a notary public. At the time, the petitioner felt that the agreement was fair.

When they were married, both parties were employed by the United States Postal Service. Throughout the marriage, the petitioner continued her employment there. The respondent, however, was fired in 1991 for a crime that he committed and remained unemployed for almost a year. Consequently, he spent $10,000 of marital assets in an unsuccessful effort to be reinstated to his job. In succeeding years, the respondent remained either unemployed or underemployed.

In 1995, the parties separated for approximately one year. During that period, as a result of assault charges, the petitioner obtained a domestic violence restraining order against the respondent. During the time they were separated, the petitioner's mother gave the parties $30,000 for improvements to the marital home. In March 1999, the petitioner filed for divorce. Shortly thereafter, she obtained a second domestic violence restraining order against the respondent, which he violated.

After a hearing, the trial court granted the divorce on grounds of irreconcilable differences. The court ruled that the antenuptial agreement was unenforceable, based mainly upon the facts that: (1) the respondent presented the agreement to the petitioner one day before the wedding, which "raises the question of a subtle form of duress"; and (2) there were

substantially changed circumstances from the time the agreement was executed. This appeal followed.

On appeal, the respondent argues that the trial court erred in concluding both that there was "a question of a subtle form of duress" in the agreement's execution and that circumstances had substantially changed from the time the parties entered into the agreement.

■ RSA 460:2-a (1992) allows "[a] man and woman in contemplation of marriage [to] enter into a written interspousal contract," which carries with it a presumption of validity. *See MacFarlane v. Rich (MacFarlane)*, 132 N.H. 608, 614 (1989). Ordinary principles of contract law govern antenuptial agreements. *See Norberg v. Norberg*, 135 N.H. 620, 623 (1992). An antenuptial agreement is valid unless the party seeking invalidation of the agreement proves that: (1) the agreement was obtained through fraud, duress or mistake, or through misrepresentation or nondisclosure of a material fact; (2) the agreement is unconscionable; or (3) the facts and circumstances have so changed since the agreement was executed as to make the agreement unenforceable. *See MacFarlane*, 132 N.H. at 614.

The respondent first challenges the trial court's ruling that the antenuptial agreement was invalid because it was executed under circumstances that suggest duress. "To establish duress, a party must show that it involuntarily accepted the other party's terms, that the coercive circumstances were the result of the other party's acts, that the other party exerted pressure wrongfully, and that under the circumstances the party had no alternative but to accept the terms set out by the other party." *Goodwin Railroad, Inc. v. State*, 128 N.H. 595, 605 (1986) (citation omitted).

■ Although the language used by the trial court is somewhat ambiguous, we will assume for purposes of the appeal that the trial court found duress. Accordingly, we consider whether the circumstances surrounding the execution of the antenuptial agreement support that finding. The petitioner was presented with the antenuptial agreement approximately one day before her wedding. This fact alone, however, is insufficient to support a finding of duress. *See Howell v. Landry*, 386 S.E.2d 610, 617 (N.C. Ct. App. 1989). In *Howell*, the court concluded that an antenuptial agreement was valid although the agreement was presented to the wife the night before the wedding and there was a threat that the marriage would not take place. *See id.* In addition, the court declined to presume that the wife had insufficient time to obtain legal advice based only on the fact she was given the agreement on the eve of the wedding. *See id.* at 618. In the instant case, aside from the fact that the agreement was presented to the petitioner one day before the wedding,

there are no other facts or circumstances supporting a finding of duress. Here, as in *Howell*, the threat that the marriage would not take place, standing by itself, is insufficient to support a finding of duress. Additionally, in the case before us, the trial court presumed that the petitioner had no time to have an attorney review the agreement. As did the court in *Howell*, however, we decline to presume on the evidence presented that the petitioner had insufficient time to consult with an attorney had she decided to do so.

The petitioner relies upon several cases from other jurisdictions for the proposition that presenting an antenuptial agreement immediately prior to a wedding will render the agreement unenforceable. Those cases, however, are distinguishable. While the agreements may have been presented for execution a day or so before the scheduled wedding in those cases, there were additional circumstances coupled with the timing that created a situation of undue influence or duress. *See, e.g., Lutgert v. Lutgert*, 338 So. 2d 1111, 1115-17 (Fla. Dist. Ct. App. 1976); *Zimmie v. Zimmie*, 464 N.E.2d 142, 146 (Ohio 1984); *Bauer v. Bauer*, 464 P.2d 710, 712 (Or. Ct. App. 1970); *In re Marriage of Matson*, 705 P.2d 817, 819 (Wash. Ct. App. 1985). In *In re Marriage of Matson*, the court refused to enforce an antenuptial agreement. In addition to timing, the court relied upon the parties' disparity in bargaining power, that the same attorney advised both parties, and that there was no showing that the wife understood the legal significance or consequences of the agreement. *See In re Marriage of Matson*, 705 P.2d at 819-21. In *Zimmie*, in addition to giving the plaintiff the agreement the day before the wedding, the defendant had not disclosed his financial worth and the plaintiff did not understand that she was giving up any rights to the defendant's property. *See Zimmie*, 464 N.E.2d at 146.

■ Here, the trial court suggested that the petitioner did not knowingly enter into the agreement because she had insufficient time to examine it. We disagree. Unlike *In re Marriage of Matson* and *Zimmie*, the petitioner fully understood the legal significance and the consequences of the agreement. She testified that when she signed the agreement, she understood that she was giving up her rights to the respondent's $70,000 down payment. Also evidencing the petitioner's understanding of the agreement is her testimony that, at the time of the agreement's execution, she felt that its terms were fair because it was the respondent's money. Moreover, there is no issue of a failure to disclose assets. Therefore, we hold that there was insufficient evidence to support the trial court's conclusion that the antenuptial agreement was executed under duress.

Next, the respondent argues that the court erred in concluding that the parties' circumstances have so substantially changed since the agreement was executed that it would be unconscionable to enforce it. In *MacFarlane*, we stated that provisions in an antenuptial agreement may become invalid by reason of changed circumstances if those circumstances were so far beyond the contemplation of the parties when they entered the contract that its present application to a spouse would be so one-sided that its enforcement would be unconscionable. *See MacFarlane*, 132 N.H. at 616-17. The court may refuse to enforce an antenuptial agreement, for example, if enforcement would result in one spouse becoming a public charge. *See id.* at 616.

■ In the instant case, the petitioner asserts that the respondent's use of marital assets for unsuccessful litigation and unwise business ventures, his unemployed and underemployed status, his erratic change in behavior, and her and her parent's contributions to household expenses are all changes in circumstances that render the agreement unenforceable. In our view, these changes in circumstance are not so far beyond the contemplation of the parties when the agreement was executed that "its enforcement would work an unconscionable hardship." *Id.* at 617.

*Reversed and remanded.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; NADEAU and DUGGAN, JJ., concurred; DALIANIS, J., concurred in part and dissented in part.

DALIANIS, J., concurring in part and dissenting in part. I respectfully concur in part and dissent in part from the majority opinion. I agree that the trial court's ruling that changed circumstances required voiding the antenuptial agreement is incorrect as a matter of law. I believe, however, that the majority should neither have assumed that the trial court found duress nor have analyzed whether the record supported such a finding.

In *MacFarlane v. Rich (MacFarlane)*, 132 N.H. 608, 614-17 (1989), we held that the presumption that an antenuptial agreement is valid may be rebutted with proof that one or more of the following standards of fairness were not met: (1) the agreement was obtained through fraud, duress or mistake or through misrepresentation or nondisclosure of a material fact; (2) the agreement was unconscionable; or (3) the facts and circumstances have changed since the agreement was executed so as to make it unenforceable.

The trial court voided the parties' agreement in part because of changed circumstances. This ruling is flawed for the reasons stated in the majority's opinion.

The trial court also voided the agreement because the circumstances under which it was executed raised "the issue" or "the question" of duress. I disagree with the majority that this constitutes a finding of duress. Absent such a ruling, the trial court should not have voided the agreement for procedural unfairness.

Moreover, had the trial court made such a finding, I believe it could be supported by the evidence. The record shows that the petitioner, like the wife in *In re Marriage of Matson*, 705 P.2d 817, 819 (Wash. Ct. App. 1985), and the plaintiff in *Zimmie v. Zimmie*, 464 N.E.2d 142, 146 (Ohio 1984), did *not* understand the agreement's significance or consequences. She testified that although she understood that the agreement was a legal document, she did not understand that it applied in the event that the house was sold. Nor did she testify that she understood that the agreement applied if she and the respondent had children or became seriously ill. As she stated, "I was getting married the next day. I wasn't really concerned about [the] $70,000." The petitioner further testified that the agreement was drafted by the respondent's attorney, who did not meet with her or explain the agreement to her, and that she was not represented by an attorney during the transaction. I believe that this testimony, in addition to the fact that the agreement was presented to the petitioner "[a] day or so before the wedding," could support a finding of duress.

On the other hand, the petitioner also testified that she understood that the agreement entitled the respondent to the $70,000 in the event that they divorced, and that she believed the agreement was fair when she entered into it. Because I believe that it is the role of the trial court, in the first instance, to resolve the conflicts in the petitioner's testimony and issue a finding as to whether the circumstances surrounding the agreement's execution constituted duress, I would vacate and remand for further findings.